ALMA F. HOWARD, APPELLEE, V. JOHN DUNCAN, APPELLANT.

FILED DECEMBER 4, 1913. No. 17,362.

Vendor and Purchaser: FALSE REPRESENTATIONS: RESCISSION. False representations by vendor that irrigable land in Colorado will produce particular crops of sufficient value to meet deferred

instalments of the purchase price as they mature annually, that sufficient water for irrigation is available, and that the land is worth $100 an acre, though its value is only $40 an acre, may be sufficient to justify a rescission of the contract of sale, when made to and relied upon by a vendee residing in Nebraska, who never saw the land and was ignorant of its character and value.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Charles A. Robbins,* for appellant.

*Hall & Bishop,* contra.

ROSE, J.

This is a suit in equity to cancel a contract bearing date June 3, 1907, and obligating plaintiff to purchase from defendant for $6,460 an 80-acre tract of land in Bent county, Colorado. Plaintiff also demands judgment for $2,650, the amount paid on the purchase price. The right to rescind is based on alleged fraudulent representations inducing the sale. Defendant denied the fraud imputed to him, and pleaded that the real consideration for his land did not exceed $5,000; that the expressed consideration included inflation in the value of real estate exchanged by plaintiff for the Colorado land; that plaintiff ratified the sale and defeated rescission by continued occupancy, by leasing the premises, by collecting rentals for two seasons, and by listing for sale at an increase in price the land conveyed to her. The trial court canceled the contract and entered a judgment in favor of plaintiff for $2,260, and defendant has appealed.

Plaintiff agreed to purchase the 80-acre tract of Colorado land for $6,800, being $85 an acre. She was allowed a credit of 5 per cent. of the total as the commission of her son, H. B. Murphy, for making the sale for defendant. The difference, or $6,460, was the consideration mentioned in the contract. Defendant agreed to accept as part of the purchase price, and plaintiff conveyed to him, an im-

proved lot in Lincoln, Nebraska.  It was exchanged at a valuation of $4,250 and was mortgaged for $1,600.  The difference, or $2,650, was acknowledged as a payment on the Colorado land.  The balance of the purchase price of the 80-acre tract, $3,810, was to be paid by plaintiff in seven annual instalments, the first and second being $545 each, and each of the others $544, all bearing interest at the rate of 6 per cent. per annum.  The evidence justifies a finding that the Lincoln property was exchanged at its fair market value.  It was sold and transferred by defendant before this suit was commenced, and for that reason plaintiff sought and recovered judgment for its value in lieu of the property itself.  Defendant had an option to buy for $40 an acre the quarter-section of which the land in controversy was the west half.  Before he acquired title he tried to find a purchaser for it.  With that end in view his agent, D. R. Cone, took plaintiff's son, H. B. Murphy, a prospective purchaser, from Fremont, Nebraska, to Colorado to see the land.  There they met defendant.  He and Murphy crossed the tract.  Murphy was on the premises for perhaps an hour.  He subsequently entered into a contract to purchase the east half.  Defendant engaged him to negotiate with his mother for the sale of the west half, agreeing to pay him for his services in that capacity a commission of 5 per cent. on a purchase price of $6,800.  Murphy talked with his mother on the subject.  Defendant made two trips to Lincoln to see her, and he talked with her about the matter on both occasions.  The first conversation lasted from 15 to 30 minutes and the last consumed perhaps half an hour.  Thus far the facts narrated, except as to the value of the Lincoln property, are established without substantial conflict in the evidence, though defendant insists that Murphy was his mother's agent.

Proof that defendant made false representations is directly contradicted by him, and from his standpoint his counsel has ably presented his case.  In determining the issue of fraud, the relative situations of the participants in the transactions should be considered.  The land re-

quired irrigation.   Defendant was an experienced dealer
in real estate.   He had lived in Colorado.   He was familiar
with the land and with the means of irrigating it.   As an
engineer he had been employed by the promoters of irriga-
tion projects in the vicinity.   Plaintiff lived in Lincoln.
She had never seen the property and knew nothing about
irrigation or irrigated lands.   Her son was a commercial
traveler, and, except for his visit to Colorado, was no
better advised than his mother.

Plaintiff relies on representations made by defendant to
her and to her son.   There is proof that the representations
to each were practically the same.   For the purpose of
testing the evidence of fraud, Murphy should be regarded
as the agent of defendant.   That defendant made repre-
sentations to Murphy for the purpose of inducing him to
purchase at least half of the quarter-section cannot be suc-
cessfully refuted.   Defendant's own testimony shows that
he engaged Murphy to sell the west half of the quarter-
section to his mother.   The effect of the agency thus estab-
lished was not destroyed by the subsequent act of the son
in directing defendant to allow plaintiff credit for the
commission.   Defendant should be charged with any in-
strumentalities employed by his agent to bring about the
sale to plaintiff.

Under the circumstances of this case, it is immaterial
on the issue of fraud whether the representations were
made to the son or to the mother, since they were com-
municated to her by defendant or by his agent or by both.
She testified in substance that defendant, during his con-
versations with her, before she entered into the contract,
described the particular growing crops and the purposes
to which the soil is adapted, giving quantities and values.
In this connection she said:   "He assured me that I could
realize enough on the land from the proceeds of it to finish
paying it out."   While the truthfulness of this testimony
is denied by defendant, he admits that the son had pro-
cured from some source data from which he made calcu-
lations to show that the deferred payments could be met

with the proceeds of the land.   The inference from all of the circumstances is that this data came directly or indirectly from defendant, and that plaintiff told the truth. There is convincing proof that the representations to which she testified were false.   Plaintiff further testified in effect that defendant told her the land he was offering for $85 an acre was worth $100 an acre and could be sold for that.   At that time he had an option to buy it for $45 an acre.   More than a year later he listed it for sale at $65 an acre.   There is also proof indicating that defendant misrepresented the amount of water available for irrigation.   When plaintiff's ignorance of conditions and defendant's knowledge and experience are considered with her absence in Nebraska and his presence in Colorado, the fraudulent representations proved are material.   That plaintiff relied upon them there can be no doubt.   She sold her mortgaged home to make the initial payment. She was without means to make the first deferred payment on the purchase price when the proceeds of the land purchased proved to be insufficient.   The demands of brevity have prevented an extended reference to the evidence, but all of the proofs and the observations of counsel thereon have been examined and considered.

The defenses of laches and ratification are not fully established.   Having perpetrated fraud in the manner indicated, defendant, for reasons already suggested, is not in a position to exact of plaintiff extreme vigilance in discovering and renouncing it.   He received property of the value of $2,650 and attempted to forfeit plaintiff's contract for nonpayment of the first deferred instalment of $545. Her right to redress should not be defeated because she retained the Colorado land more than a year.   At the end of that period she was not fully advised of the fraud.   She still hoped that another season would be more propitious.

Neither should relief be denied on the ground that plaintiff listed the land for sale at $100 an acre.   This act indicated a reliance on defendant's representations before she realized the extent to which she had been overreached.

47

Defendant was credited with the first season's rentals. Plaintiff testified that she did not receive a cent from that source for the second year, and the evidence does not sufficiently show what her son received or his authority to act for her in making collections.

The findings below are here adopted as correct.

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.