---

BINGHAMPTON TRUST CO. v. GREGORY.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

BANKRUPTCY (§ 345*)—CREDITORS—PRIORITIES.

Where, upon the bankruptcy of private bankers, it appeared that for more than two years a trust company, with knowledge of their hopeless insolvency, advanced them money to continue in business and to recoup their losses by speculation, and that the bankers returned to the trust company notes taken by them in the ordinary course of business, and the bankers borrowed all of the money deposited in their bank, the rights of the depositors in such bank to those notes were superior to those of the trust company, for the arrangement was practically a fraudulent conspiracy between the trust company and the bankers.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.*]

Appeal from Trial Term, Broome County.

Action by the Binghampton Trust Company against William M. Gregory, as trustee in bankruptcy of the estate of Charles J. Knapp, Charles P. Knapp, Morris Knapp, and Florence Knapp Yocum, individually and as a company, partners, constituting the firm of Knapp Bros. From a judgment for plaintiff and an order denying his motion for new trial, defendant appeals. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

E. D. Cumming (Hinman, Howard & Kattell, of counsel), for appellant.

McManus & Buckley (Peter J. McManus, of counsel), for respondent.

JOHN M. KELLOGG, J. The plaintiff trust company was managed by its president, Charles J. Knapp, who was one of the firm of Knapp Bros., which was carrying on business as individual bankers at Deposit, Delaware county, and at Callicoon, in Sullivan county. The trust company and the banks closed their doors April 8, 1909, and the Superintendent of Banks is liquidating the former as an insolvent corporation, and the firm and its members were duly adjudged bankrupts. For a long time prior to April 8, 1909, there had been a course of dealing between the trust company and the banks, by which the trust company advanced them moneys from time to time, and they from time to time sent to it various notes which they had taken in their business. The notes were sent by mail, and, when received, were credited on general account at their face and at 1 per cent. in addition for the time which they had to run, so that the trust company

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was receiving 1 per cent. less upon the notes than the banks were to receive. When the notes approached maturity, they were returned to the bank where they were payable, which received payment or renewed them at will, crediting the amount received to the trust company, and sending renewal or new notes from time to time as they were received. When they closed business, the amount due depositors by the bank at Deposit was $649,761.07 and by the Callicoon bank $331,951.33. The Callicoon bank from its deposits had advanced to the bank at Deposit $190,000 without interest and without security. At the Deposit bank of its $690,729.64 of bills receivable $638,625.72 were the obligations of members of the firm of Knapp Bros., their companies, or those connected in enterprises with them, and which were practically without value. There was $52,104.94 of other paper and $132,000 of notes claimed by the plaintiff and in this suit. There was carried upon the books of the bank as assets overdrafts of the Knapps, their companies, and associates of $129,671.23 which were practically valueless. The evidence shows that May 1, 1907, Knapp Bros. owed the plaintiff $66,742.11, in addition to their liability upon the notes, which it had received upon account, and which had been credited to the firm, $71,188.47, and that not only the amount of the notes, which were transferred, but the amount of the balance owing the plaintiff, steadily increased until at the time the trust company and banks closed their doors the notes which had been transferred amounted to $521,087.75, and the balance due the plaintiff over and above the notes was $229,642.36. Thereupon the court stated:

"There being no dispute in this case that the net result of the transactions between the Binghampton Trust Company and Knapp Bros. was that Knapp Bros. received, not only during the four months period preceding the failure, but during the entire period of two years, prior thereto, a greater sum from the Binghampton Trust Company than the Binghampton Trust Company received from Knapp Bros., then I hold it is immaterial with what intents the Binghampton Trust Company or its officers or agents did business with Knapp Bros., and it is immaterial what notice or knowledge the Binghampton Trust Company or its officers or its agents had of the insolvency of Knapp Bros., and that this action cannot be defended upon the undisputed facts with reference to the state and condition of the account between the parties."

The counsel for the defendant then offered to prove by competent evidence:

"That during the entire time between January, 1903, and April 8, 1909, inclusive, Knapp Bros. and the individual members thereof were hopelessly insolvent to the knowledge of the members of that firm, and to the knowledge of the officers and directors of the Binghampton Trust Company. That during that time the Binghampton Trust Company from time to time loaned the firm sums of money which to the knowledge of the trust company were necessary for the firm to obtain in order to enable it to continue business and which moneys to the knowledge of the Binghampton Trust Company and its officers and directors were being so used and used to foster private enterprises and speculations in which the Knapps and members of the Knapp family were financially interested, and in loans to the Knapps and Knapp relatives, all to the knowledge of the Binghampton Trust Company and its officers. That those moneys were charged to Knapp Bros. on the books of the Binghampton Trust Company as loaned to Knapp Bros., and

on which the Binghampton Trust Company charged Knapp Bros., 5 per cent. interest, during which time the Binghampton Trust Company was borrowing upwards of $600,000 of New York banks and paying therefor interest at 6 per cent. That on April 8, 1909, the Binghampton Trust Company had in its possession promissory notes similar to those sought to be recovered in this action, which had been received by it from Knapp Bros. in the same course of dealing, and which it had received and credited to the account of that firm with the Binghampton Trust Company within four months preceding April 8, 1909, aggregating more than $400,000, and at that date Knapp Bros. held in their possession the notes involved in this action which notes that firm had previously sent to the Binghampton Trust Company for credit, and which, after having been credited by the Binghampton Trust Company to Knapp Bros.' account, had been returned by the Binghampton Trust Company to Knapp Bros., and payment of all which notes had been gauranteed by Knapp Bros. to the Binghampton Trust Company. We also offer to show by competent evidence that all the foregoing notes had been transferred to the Binghampton Trust Company from the firm of Knapp Bros. with the intent upon the part of Knapp Bros. to hinder, delay, and defraud its other creditors, which intent was known to the Binghampton Trust Company and to its officers and directors at the time when the notes were received by the Binghampton Trust Company, and also that the fact that any of those notes were being or had been so transferred to the Binghampton Trust Company by Knapp Bros. was unknown to the depositors of Knapp Bros., and, had they known of that fact, they would not have made their deposits with Knapp Bros.' bank, and would not have given credit to Knapp Bros.; also that, if these transfers are permitted to stand, the creditors of Knapp Bros. will receive not to exceed 5 per cent. on their claims; that during the entire course of dealing between Knapp Bros. and the Binghampton Trust Company the notes received by the Binghampton Trust Company from Knapp Bros. and returned by the Binghampton Trust Company to Knapp Bros., were with the knowledge and consent of the plaintiff handled by Knapp Bros. after their return, in so far as collecting or renewing them was concerned, exactly as though they were their own, and the proceeds of such notes were retained by Knapp Bros.; also, that each of these notes, as received by the Binghampton Trust Company from Knapp Bros., was credited to Knapp Bros.' account on a past-due indebtedness owing by Knapp Bros. to the Binghampton Trust Company—that is, they were credited on the books of the trust company.

"Plaintiff's Counsel: We do not object to the form of proof and consent that the offer may be received as though the evidence itself were offered, but all evidence tending to show what has been stated would be objected to by us as incompetent, irrelevant, and immaterial, and not within the issues.

"Defendant's Counsel: We offer competent evidence to prove those facts.

"The Court: I hold the facts recited in the offer, if established, would not be a defense in this action, so long as the condition of the accounts is concededly as it is, and I therefore decline to receive the evidence and sustain the objection. (Exception to defendant's counsel.)

"Defendant's Counsel: Let me also ask at this time if this is in any way based upon our pleading?

"The Court: Not at all."

It is manifest that if the plaintiff, with full knowledge of the transaction, was bolstering up the insolvents to enable them to carry on their banking business, and thereby obtain money from depositors with which to continue their hazardous speculations, and were from time to time secured by receiving the notes which the banks received for their depositors' money, the transaction was a mere confidence game to obtain money from the depositors without any ability to return the same, with the intent to engage the moneys in the hazardous speculation of the insolvent bankers. It was substantially a conspir-

acy between the trust company and Knapp Bros. to keep afloat the insolvent banks in order to obtain money from the public to continue the hazardous speculation of the Knapp Bros., and as between the plaintiff and the depositors in the bank of Knapp Bros. the latter have the better title to the notes in·question. The court below viewed the transaction entirely with reference to the bankruptcy law, but the scheme of doing business was illegal and fraudulent at common law. Plaintiff must trace its title to the notes through the illegal scheme, the result of which could only be to defraud the creditors of Knapp Bros.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.