GREGORY v. BINGHAMTON TRUST CO. et al.   (No. 149–81.)

(Supreme Court, Appellate Division, Third Department.   July 1, 1915.)

1. BANKS AND BANKING ☞314—DUTIES OF DIRECTORS—STATUTE.

Under Laws 1906, c. 481, requiring the board of directors of every bank and trust company to examine into its books, papers, and affairs, so as to ascertain the value and security of its loans, and to inform themselves as to the condition of the company, the directors cannot be heard to say that they did not know what a fair and intelligent discharge of their duties must have disclosed.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 121; Dec. Dig. ☞314.]

2. BANKRUPTCY ☞303—ACTION BY TRUSTEE—SUFFICIENCY OF EVIDENCE—FRAUD.

Evidence in an action by a trustee in bankruptcy of a banking firm to recover notes which defendant trust company had received from the bankrupt *held* to sustain a finding of a fraudulent conspiracy to use defendants' funds to give the appearance of solvency to the bankrupt in fraud of its creditors and depositors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ☞303.]

3. FRAUD ☞58—EVIDENCE.

While fraud must be proved, it may be an inference from the established facts.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. ☞58.]

4. BANKRUPTCY ☞279—FRAUDULENT CONSPIRACY AGAINST CREDITORS—RECOVERY.

In such case the trust company became responsible for damage to the bankrupt firm's creditors and depositors, who were not in a position to protect themselves, so that the trustee in bankruptcy might recover the notes, etc., received from the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. ☞279.]

Appeal from Trial Term, Broome County.

Action by William M. Gregory, as trustee in bankruptcy of Charles J. Knapp and others, individually and as constituting the firm of

---
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Knapp Bros., against the Binghamton Trust Company and George C. Van Tuyl, Jr., as Superintendent of Banks of the State of New York. From a judgment for plaintiff, entered on a verdict, and from orders denying a new trial and awarding an additional allowance to the plaintiff, defendants appeal. Judgment and orders affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

McManus & Buckley, of Binghamton (D. Cady Herrick, of Albany, of counsel), for appellants.

E. D. Cumming, of Deposit (Harvey D. Hinman, of Binghamton, of counsel), for respondent.

WOODWARD, J. Heretofore the Binghamton Trust Company brought an action against the plaintiff in this action to recover certain promissory notes held by the latter in his capacity of trustee in bankruptcy. This action resulted in a verdict, directed by the court, in favor of the plaintiff, upon which a judgment was entered. Appeal coming to this court, the judgment was reversed; it being held that the trial court erred in refusing to permit the defendant in that action to prove that the Binghamton Trust Company had been engaged in a fraudulent conspiracy with the firm of Knapp Bros., private bankers, represented by the trustee in bankruptcy. A new trial was granted, but it would seem that the case was abandoned, and the defendant in that action has now brought an action against the Binghamton Trust Company to recover certain other promissory notes held by the Trust Company, and which came to it through Knapp Bros. This action has resulted in a judgment in favor of the plaintiff, and the Binghamton Trust Company appeals from such judgment.

The broad question of law underlying the present action was considered and determined in the previous action, and, upon the trial, the case appears to have been conducted within the lines suggested in the opinion of this court in Binghamton Trust Co. v. Gregory, 148 App. Div. 520, 132 N. Y. Supp. 950. It is only necessary, therefore, to consider new phases developed upon the trial of the action, under a complaint setting out an alleged fraudulent conspiracy to delay, defeat, and defraud the creditors of Knapp Bros., who are represented here by the plaintiff.

The complaint alleges the copartnership of Charles J. Knapp, Charles P. Knapp, Morris Knapp, and Florence Knapp Yocum under the name of Knapp Bros., doing business as private bankers at Deposit and Callicoon, in the counties of Broome and Sullivan; their bankruptcy, and the appointment of the plaintiff as trustee in bankruptcy; the existence of the Binghamton Trust Company as a domestic corporation, and that it had been taken possession of by the defendant George C. Van Tuyl, Jr., superintendent of banks, who was engaged at the time of the commencement of this action in liquidating its affairs. It is further alleged that Knapp Bros. were, and for a long time had been, insolvent, and that they received deposits of money to large amounts during, and knowing of their, insolvency, the same not being known to the said depositors; that the Binghamton Trust Company, whose president

was Charles J. Knapp, a member of the firm of Knapp Bros., advanced to the said firm of Knapp Bros. a sum of money exceeding $600,000, and that it was necessary for said firm of Knapp Bros. to obtain the money so loaned from the said Binghamton Trust Company in order to enable it to continue in business, and that the same was loaned by the said Trust Company to said firm of Knapp Bros. with the intent and purpose that the same should be used to enable the said firm of Knapp Bros. to maintain the appearance of being solvent, and to continue the banking business of said firm, so as to invite deposits of money with said firm and for the purpose of fostering private enterprises and speculations, in which the members of said firm and their relations were financially interested, and in loans to members of said firm and their relations, and that in consideration of said indebtedness of said firm to the said Binghamton Trust Company, and with the intent to hinder, delay, and defraud the creditors of the firm of Knapp Bros., such firm made to said Trust Company, and the Trust Company took and received from said firm of Knapp Bros., during said period when such loans were made, transfers of commercial paper, constituting substantially all of the property which said firm of Knapp Bros. owned, and which included the notes mentioned in the complaint; that the Binghamton Trust Company permitted such indebtedness to be incurred and took transfers of the property of the firm of Knapp Bros. with the knowledge that such firm of Knapp Bros. was insolvent, and by the concealment of such insolvency was wrongfully and unlawfully and fraudulently obtaining and receiving deposits of money from many persons with the intent to cheat and defraud said depositors of the money intrusted to said firm, and with knowledge that the property transferred to the said Binghamton Trust Company constituted the greater part of the property of said firm.

The answer does not deny the partnership, the bankruptcy, the existence of the Binghamton Trust Company, or its being taken possession of by the banking department, but denies all of the other material allegations of the complaint, and alleges affirmatively that the notes in question were taken by the Binghamton Trust Company in the ordinary course of business, and that it is the owner and holder of the said notes mentioned and described in the complaint, and that the plaintiff failed to make a claim under the provisions of section 19 of the Banking Law of the state of New York. It is further alleged that, if a cause of action exists at all, it is vested in the depositors of Knapp Bros. rather than in the trustee in bankruptcy, and that many of he notes were valueless and uncollectible, etc.

The practical question presented by the litigation is whether the loss is to fall upon the depositors of the Binghamton Trust Company or upon the depositors of Knapp Bros. If the notes belong to the Trust Company, then the loss must fall upon the depositors of Knapp Bros.; and the converse of this proposition is true, so that, while the form of the action is between the trustee in bankruptcy of Knapp Bros. and the Binghamton Trust Company, in substance it is a controversy between the depositors of these two institutions. The jury has found, after a long and tedious trial, that the Binghamton Trust Company,

under the presidency of Charles J. Knapp, one of the members of the firm of Knapp Bros., has been a party to the fraudulent transaction alleged in the complaint, and we are asked to reverse that verdict, in the face of the fact that we are committed to the general theory upon which the action has been tried. It appears clearly from the record that the Binghamton Trust Company has advanced to Knapp Bros. sums of money largely in excess of the notes which are involved in this controversy, and the first impression would naturally be that there was small foundation for the charge that the depositors of Knapp Bros. had been wronged by this course of dealing. Naturally, if Knapp Bros. had received from the Binghamton Trust Company $200,000 in excess of the amount the latter had taken away in notes, it would seem that the depositors of Knapp Bros. would be benefited thereby; but when we go beneath the surface of things, and follow through the hundreds of pages of evidence the system which was developed between these two institutions, it will appear that the large excess of loans made to Knapp Bros. of the funds of the Binghamton Trust Company, and which were, by Knapp Bros., loaned to the individual members of the firm of Knapp Bros., their relatives, and business associates, this was but a necessary step in the carrying out of the fraudulent purpose of making the depositors of Knapp Bros. tributary to the Binghamton Trust Company and the individual undertakings of Knapp Bros. and their relatives and friends. In other words, for many years prior to the collapse of the Binghamton Trust Company and the two private banks of Knapp Bros., if the Binghamton Trust Company had failed to make the loans to the firm of Knapp Bros., the latter would have been forced to retire from business, for they were unquestionably insolvent during most of the time between the establishing of these private banks in 1903 and their bankruptcy in 1909.

It is impossible to read the record in this case and not come to the conclusion that Charles J. Knapp, president of the Binghamton Trust Company, was the dominant force in the firm of Knapp Bros.; that he practically fixed the policy and determined the details of the management of both of these private banks, attending to their financial affairs in their relations with New York and Albany banking institutions, as well as conducting the various speculative enterprises in which Knapp Bros. and their relatives and friends were interested, including dealings in stocks on margin. Being thus intimately associated with Knapp Bros., he must be deemed to have known of their financial situation, and it clearly appears from the correspondence that such was the case, and the loans from time to time from the Binghamton Trust Company were made for the purpose of maintaining the credit of Knapp Bros., who were constantly engaged in highly speculative enterprises, which reasonably honest and intelligent men must have known could have but one result. Many of these loans were made in the form of transfers at New York banks of Trust Company funds to the account of Knapp Bros., when the latter would be overdrawn and their paper was being dishonored, so that, in so far as Charles J. Knapp is concerned, he unquestionably knew that the Binghamton Trust Company was being used to give a fraudulent and fictitious credit to Knapp

Bros.' private banks, by means of which the people of Deposit and Callicoon were being induced to make deposits, without any opportunity of knowing the inside workings of this financial machine.

While the defendant urges that the evidence does not establish that Charles J. Knapp knew of these facts, so as to establish actual knowledge on his part, it does not rely upon this proposition. It urges that, assuming that Charles J. Knapp did have knowledge of the insolvency of Knapp Bros. and advanced the money of the Trust Company in the manner alleged in the complaint, still that knowledge is not to be imputed to the defendant Trust Company. This is upon the theory that when an agent forms the purpose of dealing with his principal's property for his own benefit and advantage, or the benefit and advantage of other persons who are opposed in interest, he ceases in fact to be an agent acting in good faith for his principal, and the presumption that he has disclosed all the facts that have come to his knowledge no longer prevails. Jacobus v. Jamestown Mantel Co., 211 N. Y. 154, 105 N. E. 210. This rule, no doubt, is correct in relation to certain conditions, and it might be that, if Charles J. Knapp had simply taken out the amount of money and turned it over to Knapp Bros., there would be some room for the application of this rule; but here the dealings covered a series of years, involving the settled policy of the Trust Company, and the practical question is whether the knowledge which he had belonged to the Trust Company by reason of all the relations—whether the facts are such that the Trust Company, in the discharge of its duties, must have known the facts which were known to its president.

The most of the transactions are evidenced by writings. Letters passed between Knapp Bros. and Charles J. Knapp which were intended to disclose the fact that there was an improper use of the funds of the Trust Company, and the records show that the banking department was, at intervals, engaged in criticisms of the management of the Trust Company, particularly in connection with the affairs of Knapp Bros., who were not at that time under the supervision of the banking department, and if the board of directors did not have notice of the condition, it was because they purposely refused to open their eyes to the most obvious of facts. Chapter 481 of the Laws of 1906 provided that:

It "shall be the duty of the board of directors of every bank and trust company in the months of April and October in each year to examine, or to cause a committee of at least three of its members to examine, fully into the books, papers and affairs of the bank or trust company of which they are directors, and particularly into the loans and discounts thereof, with a special view of ascertaining the value and security thereof, and of the collateral security, if any, given in connection therewith, and into such other matters as the superintendent of banks may require. * * * Within ten days after the completion of each of such examinations a report in writing thereof, sworn to by the directors making the same, shall be made to the board of directors of such bank or trust company, be placed on file in said bank or trust company, and a duplicate thereof filed in the banking department. Such report shall particularly contain a statement of the assets and liabilities of the bank or trust company examined, as shown by the books of the bank or trust company, together with any deductions from the assets, or additions to liabilities, which such directors or

committee, after such examination, may determine to make. It shall also contain a statement, in detail, of loans, if any, which in their opinion are worthless or doubtful, together with their reasons for so regarding them; also a statement of loans made on collateral security which in their opinion are insufficiently secured, giving in each case the amount of the loan, the name and market value of the collateral, if it has any market value, and, if not, a statement of that fact and its actual value as nearly as possible. Such report shall also contain a statement of overdrafts, of the names and amounts of such as they consider worthless or doubtful, and a full statement of such other matters as affect the solvency and soundness of the institution."

If we assume that the board of directors did its duty as prescribed by the statute, it must be obvious that they would necessarily have found the loans made to Knapp Bros., and these should have demanded such a degree of scrutiny as must have developed the true situation. Add to this the fact that the banking department from time to time drew attention particularly to the relation existing between Knapp Bros. and the Binghamton Trust Company, and it must be clear that the directors either did not perform the duty, or that they must have known the facts which the evidence clearly shows was known to the president of the corporation.

[1] Directors, specially charged by the statute to know the condition of the institution, cannot be heard to say that they did not know the things which a fair and intelligent discharge of the duties must have disclosed. There was an overdraft on the part of the Knapp Bros. almost continuously from the organization of the private banks to the date of their closing, and this overdraft was continually growing, through manipulations designed to preserve the credit of Knapp Bros., and no board of directors, or intelligent committee, could look upon this condition and discharge its obligations, without looking into the relations existing between the president of the company and a partnership of which he was the dominant spirit and discovering what is known now throughout the community.

[2-4] It is undoubtedly true, as suggested by the defendant, that fraud must be proved, but fraud is an inference growing out of established facts, and there can be no doubt that the jury in the present case was justified in drawing the inference that the Binghamton Trust Company, knowing the insolvency of the Knapp Bros., was using its funds for the purpose of giving a false character to Knapp Bros., as bankers, and thus inducing the deposits of money which otherwise would not have been available for the manipulations which Charles J. Knapp and his associates were carrying on; that the Binghamton Trust Company, through its board of directors, knew the fraudulent purpose underlying the loans and thus became responsible for the results following to persons who were not in a position to protect themselves. There was no payment in good faith of the purchase price of the notes in question. They were simply put through a given course for the purpose of consummating the fraud, and the jury could hardly do less than reach the conclusion which was reached.

We fail to discover the presence of any irrelevant or immaterial evidence to the prejudice of the defendant. There is undoubtedly some of the testimony which adds nothing of importance to the case; but here it is necessary to spell out fraud from a series of incidents in a

long course of business, where the plaintiff is obliged to grope somewhat in the dark, and where all of the available facts are brought forward, some of them valuable in support of the defendant's contention, it is hardly to be expected that a court will overrule a verdict of a jury, unless it can be clearly pointed out that the evidence was improperly in the case and resulted in prejudice to the party complaining.

The judgment and order appealed from should be affirmed, with costs. All concur.