[No. 5254.]

[No. 2879 C. A.]

WHITEHEAD v. BALLINGER.

1.  **Appellate Practice—Verdicts—Based on Conflicting Evidence —Not Disturbed on Appeal.**

Where a question of fact, upon which the testimony was conflicting, was submitted to the jury under proper instructions, the verdict will not be disturbed on appeal.—P. 68.

2.  **Bills and Notes—Consideration—Stock Margins—Gambling Statute—Construction—Brokers.**

Appellant, the owner of 5000 shares of mining stock, instructed a broker to buy 5000 additional shares for him, and deposited the stock owned by him as security for the purchase price, the rule being that a fifty per cent. margin was required to protect such transaction. The stock declined in value, and additional margins were demanded until appellant finally gave his promissory note for $250, as a margin, payable to himself and indorsed by him, and this note was assigned after maturity to appellee. The stock at all times remained the property of

appellant and subject to his order on payment of his indebtedness to the broker. Held, that such transaction does not come within the inhibition of Mills' Ann. Stats., § 1344, providing, in substance, that all contracts, promises, agreements * * * and notes * * * made * * * where the whole or any part of the consideration shall be for money or property won by gaming, shall be utterly void; nor does it come within the rule that "All bargains for the purchase and sale of things, as stocks, etc., where it is the understanding of the parties, whether expressed or not, that the things are not to be delivered, but at the agreed time the difference between their market value at the two periods are to be adjusted, are illegal as against public policy."—P. 68.

*Appeal from the County Court of the City and County of Denver.*

*Hon. Albert S. Frost, Judge.*

Action by Edwin E. Ballinger against Andrew Whitehead. From a judgment for plaintiff, defendant appeals.                *Affirmed.*

Messrs. THOMAS & THOMAS, for appellant.

No appearance for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This action originated in a justice court. There being no pleadings, the issues are determined from the evidence.

Appellant (defendant below), the owner of five thousand shares of mining stock, instructed a broker to buy for him five thousand additional shares of the same stock, and deposited with the broker the five thousand shares owned by him, as collateral security for the payment of the purchase price of the stock so purchased, the rule being that a fifty per cent. margin was required to protect such transactions. The stock declined; additional margins were demanded by the broker, which were put up by appellant, and

finally upon demand appellant gave the broker his promissory note for $250, payable to himself and by him indorsed, as a margin. This note was assigned by the broker, after maturity, to appellee, and is the basis of this suit.

The defenses were: (1) Plaintiff below was not the owner of the note, not the "real party in interest"; (2) The note, having been given as a margin in a stock transaction, is a gambling obligation and void under Mills' Ann. Stats., § 1344; (3) The broker sold the stock below the market price.

1. Ownership of the note, a question of fact, upon which the testimony was conflicting, was submitted to the jury under proper instructions, and having been decided adversely to appellant, we cannot disturb the verdict.

2. The evidence falls far short of bringing the transaction herein involved within the inhibition of Mills' Ann. Stats., § 1344—the gambling statute—which provides, in substance, that all contracts, promises, agreements, etc., and notes, etc., made, executed, etc., where the whole or any part of the consideration shall be for money or property won by gaming, etc., shall be utterly void. Nor is there anything in the record tending to show that the contract entered into between the broker and appellant, out of which the note in suit arose, was tainted with any illegality. The evidence clearly establishes that the broker, upon the order of appellant, bought and held subject to appellant's order five thousand shares of mining stock; that appellant deposited with the broker additional shares as collateral security for the payment of money advanced by the broker for the account of appellant in the purchase of the stock, and from time to time put up additional collateral or margins to make good his security, which was constantly depreciating; that the note in suit was given as a part

of such collateral security, and was based upon a good consideration; that at all times from the inception of the transaction the stock was the property of appellant and subject to his order, upon payment to the broker of the amount of appellant's indebtedness to the broker.

This case does not come within the rule relied upon by appellant, as thus quoted by him from Chitty on Contracts, § 534:

"All bargains for the purchase and sale of things, as stocks, etc., when it is the understanding of the parties, whether expressed or not, that the things are not to be delivered, but at the agreed time the differences between their market value at the two periods are to be adjusted, are illegal as against public policy."

In discussing "option" contracts, the United States circuit court, in *Union National Bank v. Carr,* 15 Fed. 438, said:

"The validity of 'option' contracts depends upon the mutual intentions of the parties. If it be not their intention in making the contract that any property shall be delivered or paid for, but that the pretended and fictitious sale shall be settled upon differences, the agreement amounts to a mere gambling upon the fluctuations of prices, and the contract is utterly void. But if it is the bona fide intention of the seller to deliver or the buyer to pay, and the option consists merely in the time of delivery within a given time, the contract is valid. If the contract itself is lawful, the putting up of margins to cover losses which may accrue from the fluctuation of prices, and the final settlement of the transaction according to the usages and rules of the board of trade, are entirely legitimate and proper."

Conceding that the contract between appellant and the broker was an option contract, which conten-

tion is not supported by the evidence, such a contract is not, under the authorities, necessarily illegal except as denounced by statute.—14 Am. & Eng. Enc. Law 608, and cases cited.

The court committed no error in refusing to give the instructions requested by appellant to the effect, that, if the jury found from the evidence that the note was given to keep good a margin in a stock transaction, they should find for appellant. Under the evidence in this case this defense is untenable.

3. The defense that the stock was sold by the broker below the market price was decided by the jury against appellant, upon conflicting evidence, under instructions which correctly stated the law. We cannot disturb the verdict.

The judgment will be affirmed.     *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GUNTER concur.