FRIEDMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1919.)

No. 3187.

1. POISONS ⬅➡4—NARCOTICS—HARRISON ACT—PRESCRIPTIONS.
    Under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), a druggist filling a prescription for narcotics, issued to an addict, is not justified in filling the prescription, regardless of the fact that he knows or has reason to know it was not issued in good faith.

2. CRIMINAL LAW ⬅➡743—PROVINCE OF JURY—CREDIBILITY OF WITNESS.
    The jury is the sole judge of the credibility of witnesses.

3. POISONS ⬅➡9—HARRISON ACT—VIOLATION—EVIDENCE.
    In a prosecution, under Penal Code, § 37 (Comp. St. § 10201), for conspiracy to violate Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), evidence held sufficient to sustain a conviction of druggists, who conspired with a physician who wrote prescriptions for addicts, not in good faith and without regard to any treatment.

4. CONSPIRACY ⬅➡43(5)—EVIDENCE—OVERT ACTS.
    In a prosecution, under Penal Code, § 37 (Comp. St. § 10201), brought against druggists and a physician for conspiracy to violate Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), where purchases of narcotics by the druggist were alleged as overt acts, purchases in excess of those alleged were provable as additional and similar overt acts.

5. CONSPIRACY ⬅➡45—EVIDENCE.
    In a prosecution against druggists and a physician for conspiracy for violation of the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q),

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by unlawful sales of narcotics, evidence of quantities of narcotics purchased by the druggists was admissible.

6. CONSPIRACY ☜45—EVIDENCE.

In a prosecution against druggists and a physician for conspiracy to violate Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), by unlawful sales of narcotics, evidence of the number of narcotic prescriptions filled by the druggists, as compared with the number of prescriptions filled by other druggists, is admissible.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Benjamin Friedman and others were convicted under Penal Code, § 37, of a conspiracy to violate Harrison Anti-Narcotic Act Dec. 17, 1914, and they bring error. Affirmed.

See, also, 224 Fed. 276. Certiorari denied 250 U. S. 671, 40 Sup. Ct. 15, 64 L. Ed. ——.

Ralph Davis, of Memphis, Tenn., for plaintiffs in error.
Wm. D. Kyser, U. S. Atty., of Memphis, Tenn.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Plaintiffs in error complain of verdict against them and judgment thereon under the first and second counts of an indictment in effect charging that they conspired contrary to section 37 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]) to violate the Act of December 17, 1914 (38 Stat. 785, c. 1 [Comp. St. §§ 6287g–6287q]), known as the Harrison Anti-Narcotic Law. Motions to quash the indictment were overruled as to those counts, but sustained in respect of a third count, in which Friedman alone was charged with violation of the Anti-Narcotic Law.

The first count in substance charged that Friedman and the Thompsons, in January, 1917, and continuously thereafter until the date of the indictment, December 3, 1917, at Memphis, Tenn., unlawfully conspired and agreed among themselves to sell and dispense large quantities of morphine sulphate, a derivative of opium, to divers persons to the grand jurors unknown and without the written order forms required by the act; the plan of the conspiracy being as follows: Friedman, a physician and registered under the act, was to prepare and deliver prescriptions for morphine sulphate to applicants who were in fact or were claiming to be addicted to the use of narcotic drugs, though not with an intent on his part in good faith or in the course of his professional practice only to meet the immediate needs or to effect a cure of such persons, but for the purpose of catering to and satisfying their cravings, and the Thompsons, being engaged in business and registered under the act as retail druggists, were to fill these prescriptions and sell and dispense the drug for the purpose mentioned and not in the conduct of a lawful business. That in pursuance of the conspiracy, and to effect its object, defendants unlawfully committed the following acts at Memphis: (1) On or about August 1,

1917, Friedman made and signed a prescription in the name of F. Hassel, with a definite address in New Orleans, for ten one-eighth ounces of morphine sulphate, delivering the prescription to Homer Vance, and it was filled by the Thompsons and subsequently found in their files; (2) on or about the 4th of the same month, Friedman made and signed a prescription in the name of Homer Vance, with specific address in New Orleans and for a like quantity of morphine sul-phate, and the Thompsons filled this prescription and it was also found in their files.

The second count is substantially the same as the first, except that the object charged was to "buy and obtain opium, coca leaves, their salts, derivatives, or preparations thereof, by means of order forms issued" as provided by the act, for purposes other than the lawful use or sale thereof or the legitimate practice of a profession; the defendants were to carry out the conspiracy in the manner alleged in the first count; that in pursuance of the conspiracy, and to effect its object, the defendants at Memphis "did unlawfully * * * do the following acts": On or about July 16, 1917, the Thompsons purchased of the Van Vleet-Mansfield Drug Company and of the Hessig-Ellis Drug Company of Memphis, and on government order forms issued under the provisions of the act, "large quantities of morphine sulphate."

[1] The evidence took rather a wide range, and so far developed into mere questions of fact that no request was made for special instructions to the jury. The court delivered a general charge to which no exception was reserved, and for that reason the charge is not included in the record. It is therefore to be presumed that the jury was fully and rightly instructed both as to the law and the issues of fact. Defendants nevertheless filed motion for new trial which was in part a renewal of the motions to quash the first and second counts of the indictment, and the grounds so relied on are by reference carried into the assignments of error. The position thus taken assumes that it is not the true intent of section 2 of the act (Comp. St. § 6287h), that indeed it was not within the power of Congress to require persons situated as defendants were to concern themselves, either about questions of good faith respecting the issue or the filling of prescriptions for persons addicted to the use of narcotic drugs, or about the use of order forms when selling the drugs to such persons. This position is not tenable. The same view in effect was urged and denied in the recent case of Webb v. United States, 249 U. S. 96, 99, 39 Sup. Ct. 217, 63 L. Ed. 497, wherein the first and second counts of the indictment involved were in marked resemblance to the first and second counts of the indictment in the instant case. And see United States v. Doremus, 249 U. S. 86, 93, 95, 39 Sup. Ct. 214, 63 L. Ed. 493; Stetson v. United States, 257 Fed. 689, — C. C. A. —, decided by this court May 12, 1919; Saunders & Thompson v. United States, 260 Fed. 386, — C. C. A. —, decided to-day by this court.

[2, 3] The assignments of error relied on deny (1) sufficiency of evidence to support the verdict and (2) admissibility of certain testimony. The arguments amount to an admission that Friedman was

accustomed to issue prescriptions for morphine sulphate to persons addicted to the use of narcotic drugs, in excess of any immediate need and not intending to effect a cure, and that when these prescriptions were presented to the Thompsons they filled them, sold the prescribed drugs to the users, and placed the prescriptions in their files. The real controversy hinges on the presence or not of evidence tending to show the alleged concert of action, the conspiracy, of the defendants, and a common intent touching the issue and filling of the prescriptions and the sales as well as the purchases of drugs; in a word, is it sufficiently shown that there was a joint object to acquire the morphine and upon simulated prescriptions and without order forms to effect its sale to habitual users? Defendants do not seem to appreciate the manifest import of some of the evidence. For example, in a period of upwards of six months next preceding the date of the last overt act alleged in the first count, the Thompsons filled 9,642 prescriptions for narcotic drugs and only 107 for nonnarcotic drugs, and of the former Friedman wrote and issued 3,230. Evidence was received to show comparison between the Thompsons' prescriptions and those of a number of other druggists in Memphis during the period stated. The average number of narcotic prescriptions filled by the other druggists does not distinctly appear, though it is to be inferred from their purchases of the drug that the number was very small, amounting at most to only a few hundred, while the number of nonnarcotic prescriptions filled, for instance, by three of them, averaged more than 12,000 each. Within this period the Thompsons purchased of the two drug companies named in the second count about 20 times as much morphine as was purchased by any other retail druggist appearing in the record, and something like 60 times as much as was bought by the average retail druggist doing a larger general business in Memphis.

Further, Homer Vance, who had been a user of the drug, came from New Orleans and applied twice within four days to Friedman for morphine, and was given at each time a prescription, the first being in a fictitious name, for 10 drachms of morphine sulphate, each prescription purporting to be for "30 days' supply." There is also testimony tending to show that on a number of occasions Friedman gave more than one prescription for morphine at the same time to the same person, but under different names; that at least in the Vance transactions Friedman arranged with the Thompsons to have them fill the prescriptions; that the Thompsons never refused to fill his prescriptions, while they were refused by some of the other druggists, and were not even presented at other well-known drug stores. Not a word of criticism appears in respect of the credibility of the other druggists who testified, or of the representative character of their business; and, assuming the credibility of all the witnesses called by the government, the inferences naturally arising from their testimony and pointing to a common understanding and concert of action on the part of defendants can scarcely escape attention or be misunderstood. Judge McCall was asked to grant a new trial for the reason, among others, that the evidence was insufficient to support the verdict, and

with the advantage of having seen and heard all the witnesses when testifying he denied the motion. We are hence constrained to say of the present defendants' contention as we recently had occasion to say in another case:

"Their motion for new trial upon this ground was overruled, and the record makes clear that this court cannot interfere. If the testimony offered for the government was true, the defendants were guilty; and the jury is the sole judge of the credibility of witnesses." Mayer & Persica v. United States, 259 Fed. 216, —— C. C. A. ——, decided January 7, 1919. And see citations in Saunders & Thompson v. United States, supra.

[4, 5] It is insisted that the quantity of narcotic drugs purchased by the Thompsons was not relevant to any issue in the case. This is to overlook the purchases alleged in the second count as overt acts. Even if the purchases proved exceeded those so alleged, such excess purchases were provable as additional and similar overt acts, although not specifically set out in the indictment. Heike v. United States, 227 U. S. 131, 145, 33 Sup. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128; Houston v. United States, 217 Fed. 852, 858, 133 C. C. A. 562 (C. C. A. 9). Further, these purchases were items of evidence which, when considered in connection with other related matters, tended to show the character of the business carried on by the Thompsons. Naturally an inquiry would arise whether such a quantity was necessary to the conduct of any legitimate drug business.

[6] This brings into review another objection urged for defendants. It is said that evidence was inadmissible to show the quantities of narcotic drugs purchased and sold, as also the quantities of nonnarcotic drugs sold, by other druggists. Such evidence was calculated to furnish a fair test of the true nature and purposes of the Thompson business. It is not suggested, much less shown, that there was anything peculiar to the business of the other and neighboring druggists in Memphis which would differentiate their business from any legitimate drug business; and it cannot be doubted that the purchases and sales involved in the business of each of a number of different druggists in the vicinity would afford appropriate means of testing the character of the particular drug business under inquiry. We had occasion to consider questions similar to these in the case of Webb v. United States, before cited. We thought that facts there disclosed, which were kindred to the instant facts, gave color to the transactions involved in the vital issues, and we see no reason why this is not true here. The question of admissibility of such evidence cannot be tested by reference alone to any single fact; it is the sum of the facts so collocated and presented from which the claimed related features must be determined.

Other assignments of error are presented, which we do not discuss; but so far as based on objection and exception they do not appear to be well taken.

The judgment must be affirmed.