[No. 14538. Department Two. May 7, 1918.]

JAMES CLARK, *Respondent*, v. FRANK GROGER *et al.,*
*Appellants.*[1]

CORPORATIONS—DISSOLUTION—POWERS OF TRUSTEES. A corporation
with defined powers limited to the manufacture and sale of beer and
the operation of a brewery, is not dissolved by the state-wide prohi-
bition law; and its stockholders are not thereby made tenants in
common of its property, but as between stockholders, it may engage
in any lawful business, and the trustees have power to assemble its
assets and liquidate its indebtedness and, pending a formal dis-
solution, conduct its affairs.

SAME—RIGHTS OF STOCKHOLDERS. A stockholder of such a corpo-
ration dispossessed by stockholders in control of the stock, has no
right to assert possession over other stockholders, by reason of his
former control of the majority of the stock.

TROVER AND CONVERSION—WHAT CONSTITUTES—CLAIM OF TITLE—
TRUSTEES OF CORPORATION. Corporation trustees are not guilty of a
conversion in taking possession of the property of a stockholder,
where, by resolution, they disclaimed any intention of claiming the
same as owners, admitted the adverse title, and demanded its removal
from the plant.

SAME—TRUSTEES OF CORPORATION—LIABILITY. One refusing to re-
move his property on demand of trustees of a corporation, cannot
hold·the trustees liable for the value of the property used, as for a
conversion by them, his remedy being against the corporation for
an accounting for the property used by it.

CORPORATIONS—RIGHTS OF STOCKHOLDER. Where a stockholder's
operation of a corporation plant was by sufferance only, without any
right of possession, upon dispossession he cannot recover for lost
profits anticipated in continuing the business.

Appeal from a judgment of the superior court for
Kittitas county, Davidson, J., entered May 16, 1917,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for conversion. Reversed.

*Eugene E. Wager* and *Bogle, Graves, Merritt &
Bogle,* for appellants.

*Ralph Kauffman,* for respondent.

[1]Reported in 172 Pac. 1164.

CHADWICK, J.—For fifteen or twenty years prior to January 1, 1916, the Ellensburg Brewing & Malting Company, a corporation, had engaged in the manufacture of beer and conducted a brewery business at Ellensburg. With the dawn of that day its occupation was gone. At the time the earth slipped out from under it, James Clark, the plaintiff, was the owner of stock of the par value of $13,500. Frank Groger owned stock of the par value of $11,500. Clark conceived the idea of operating the plant as a place for the manufacture of soft drinks, etc., and accordingly leased the stock of Frank Groger. Clark, with one August Sold, former brewmaster, who owned ten shares of the stock, at once began to manufacture near beer, cider and other products upon a profit-sharing basis. The annual meeting of the stockholders occurred on May 10, 1916. Clark voted his own and Groger's stock. He was thereafter elected president by the trustees of his own choosing. He had already taken possession of the plant and all of the personal property and stock on hand of the brewing company and put it to the uses of the new business.

In the summer of 1916, Groger, who after the lease of his stock had gone to California for his health, returned and began buying other outstanding stock, including Sold's stock, so that, at the time the lease expired on January 1, 1917, he was the owner of 181 shares, being a clear majority of the whole. A part of this stock was taken over in the name of his wife, Emma Groger, and a part in the name of his son, Casper Groger.

On January 6, 1917, at a special meeting of the stockholders, Casper Groger, son of Frank Groger, and Emma Groger, wife of Frank Groger, were elected trustees in place of Sold and one Brown, whose stock had been bought by Groger. It is said that the mother

and son never qualified as trustees, but they assumed to act as such, for, at a meeting of the trustees held on January 19, 1917, the following proceedings were had:

"Upon motion of Emma Groger, duly made and seconded and carried by a vote of all trustees present, it was ordered that as the brewing building was idle, and that the occupancy of the Ellensburg Bottling Works had terminated, that the same be at once operated by the company for the making and manufacturing and selling of soft drinks and substitutes for beer; and that as the vats in said building were being injured and destroyed by being filled with vinegar and other materials, that they be cleaned and the vinegar and so forth be removed therefrom, and work on the cleaning and operating of said plant commence at once, and the trustees proceed at once to take the necessary steps to operate said plant, and notify Clark to remove the vinegar and so forth therefrom."

Clark was not present at this meeting, although he had called the meeting and given notice of the time and place where it was to be held.

On January 26, 1917, Mrs. Groger and August Sold went to the brewery and notified plaintiff that it was the intention of the corporation to take possession, and called upon him to remove his property. When he returned after his dinner hour he found the doors barred and locked and a guard in charge, who informed him that he would not be permitted to enter. He did enter the building later in the afternoon, after securing permission from Groger and a pass from his attorney. Plaintiff did not remove any of his property at that time, nor did he attempt then or thereafter to do so. Being convinced, however, that the defendants, as trustees for the corporation, were about to engage in the business of manufacturing soft drinks, and conceiving that such an undertaking was *ultra vires* of the corporation as its powers had been defined in its

articles: "the manufacture and sale of beer, and to establish, conduct and operate a brewery," he brought an action to restrain the further prosecution of the business. Such proceedings were thereafter had in that case that a receiver was appointed and he took possession of all of the property then on hand, that owned by plaintiff, as well as that which was admittedly the property of the Ellensburg Brewing & Malting Company.

Before passing to the pertinent issues, let it be known that plaintiff never made any demand upon the receiver for the property he now claims, nor has he ever accounted to the receiver or to the corporation for the use of its property in the prosecution of his individual business.

Contrariwise, he brought this action on the 6th day of February, 1917, against these defendants, as individuals, to recover damages as for conversion of the property owned by him individually at the time he was ousted of his possession. He fixes his damages as the value of the property at the time of the alleged conversion, and anticipated profits upon the sale of stock on hand and goods to be manufactured out of unmanufactured stock.

Although combated vigorously at all stages of the proceeding and at the trial, the trial judge followed the theory advanced by plaintiff and has rendered a judgment against the defendants Groger upon the verdict of a jury in the sum of $5,000. A verdict was returned in favor of Sold, who was made a party defendant.

Plaintiff's whole case is predicated upon the assumption that the Ellensburg Brewing & Malting Company, having corporate power limited to "the manufacture and sale of beer, and to establish, conduct and operate a brewery," had no legal existence after the first day of January, 1916, (a) because its corporate

powers were impliedly repealed by the spirit, if not the terms, of the prohibition law and (b) under the general rules of law as they pertain to defunct corporations, the trustees having no power to engage in the brewing business or to do anything other than to wind up the affairs of the corporation and to distribute its assets, it follows that they are liable as individuals. Counsel says:

"Our contention is that the shareholders of the corporation become at once tenants in common of this property, subject, however, to the lien of the dead corporation's debts. See Cook on Corporations, § 641. Now, the law unquestionably is that co-tenants have equal rights to the possession and occupancy of the property of which they are co-tenants. 7 Ruling Case Law, Co-Tenancy, paragraphs 14 and 15.

"And so when the corporation died on January 1, 1916, Clark had a perfect right to enter into the occupancy of the tangible property of the defunct organization, and could maintain that occupancy against his fellow-shareholders. Indeed, if anything, he had the best right to enter into such occupancy because he was by long odds at that time the largest shareholder as owner and lessee. So that, so far from being a trespasser when he went into the occupancy of the property, he was only exercising what were his unquestionable and undoubted rights. It may be true that he might be called to account by his co-tenants for the reasonable rental or value of the occupancy in question, but that is very far from saying that he was not rightfully there, and that he might be rightfully dispossessed."

We cannot follow counsel in his contention that defendants were without power to act as trustees. Trustees of a corporation have a general power to wind up a defunct corporation; that is, assemble its assets, liquidate its indebtedness and, pending a formal dissolution, conduct its affairs. And as between stockholders, it may engage in any lawful business, wheth-

er within or without the powers as defined by its franchise, and continue to do so until restrained at the suit of a stockholder—which was done in this case at the suit of plaintiff—or by the state *ex rel.*, under a writ of *quo warranto*. 7 R. C. L., Corporations, § 516. If this view is sound, it follows that the stockholders of the Ellensburg Brewing & Malting Company were not tenants in common. But, if it were held otherwise, plaintiff is in no position to assert a right of possession over his fellow stockholders. His dispossession and their possession would put them in the same position he was in when in possession. If plaintiff had a right of possession by reason of stock control, defendants would have the same right when in control. We are not committing ourselves to this doctrine, but advance it only to show that, if there be merit in the theory of plaintiff, he is hoist by his own petard.

Plaintiff had certain property, apples, malt, etc., and some manufactured products on hand at the time he was ousted and the brewing company started in the business of manufacturing soft drinks on its own account. The receiver would, no doubt, be liable to account for the value of these goods, subject, of course, to an accounting on the part of plaintiff for such goods as were on hand and used by him at the time he began to manufacture on his own account.

But it is insisted that, even though it be held that the act of taking possession of the brewery plant was the act of the corporation, the taking being in the nature of a trespass, the officers of the corporation who participated in the act are personally liable to answer in a suit for conversion. 7 R. C. L., Corporations, § 493. We have heretofore affirmed this principle. *Lytle Logging & Mercantile Co. v. Humptulips Driving Co.*, 60 Wash. 559, 111 Pac. 774.

But it cannot be held arbitrarily that the mere taking of goods is sufficient to sustain an action for conversion. A wilful, or even an unlawful taking, will not always amount to conversion. There must be some assertion of right or title that is hostile to the true owner. In the instant case, the trustees, by resolution, disclaimed any intention of claiming as owners. They not only admitted the title of the plaintiff, but made a demand that he remove his property. His answer to this demand was not made with a moving van, but by filing an action in damages for conversion.

This phase of the case is learnedly treated in *Lee Tung v. Burkhart,* 59 Ore. 194, 116 Pac. 1066, where it is said:

"In an action of trover it is not sufficient that the facts show a mere trespass, without showing a conversion . . . There may be an actual, wrongful exercise of dominion over chattels without constituting a conversion, if such dominion is not a denial or repudiation of the owner's right or title."

And this we understand to be the doctrine of *Browder v. Phinney,* 37 Wash. 70, 79 Pac. 598.

In answer to this it may be urged that the use of the malt, apples and manufactured stock was the assertion of a right in derogation of the title of the plaintiff. This would be so ordinarily, but the personal liability of the defendants could not be extended over a time beyond which plaintiff should have removed his property in obedience to the demand of the trustees. He had his choice of remedies. He could comply with the request of the trustees and remove his property, or he could undertake to sell it to the corporation or to the trustees as individuals by resort to a claim for damages as for a conversion. He chose to hold the trustees as individuals and must fail, for it is shown

that his loss, if any, is due to his own omission. He cannot recover upon a personal liability the value of that which he might have had for the taking. His remedy, if any, is against the corporation.

While it is not necessary to a decision in this case, it may not be out of place to observe that, in the adjustment of the rights of plaintiff and of the corporation, plaintiff could not recover as for lost profits. His occupation of the brewery plant was at sufferance only. The trustees had a right to repossess themselves of the plant for the benefit of the corporation. His right to recover lost profits would depend upon his right to manufacture at the brewing plant. This he did not have, and it follows that his loss on unmanufactured products, if any, must be measured by the value of his goods at the time of the taking.

Reversed, and remanded with instructions to entertain appellants' motion for judgment.

ELLIS, C. J., FULLERTON, and MOUNT, JJ., concur.