## No. 11,322.

### Scott, et al. *v.* Shook, et al.

Decided July 12, 1926.　Rehearing denied September 13, 1926.

Action in conversion.　Judgment for plaintiffs.

## *Affirmed.*

1. Evidence—*Effect.* Plaintiffs cannot deny the effect of their own evidence.

2. Brokers—*Custom.* In the case under consideration, evidence held to establish a custom of grain and stock brokers when buying or selling on a distant board of trade to make such sales or purchases through a correspondent having a seat on the exchange.

3. *Board of Trade—Rules.* Cases cited sanctioning a compliance with rules and usages of a board of trade.

4. *Board of Trade—Rules.* An order from a customer to be executed on a board of trade contemplates conformity with the lawful rules and customs that prevail there.

5. *Purchase on Margins—Liability.* Under the facts disclosed, a broker is held liable for conversion of money deposited by a customer as a margin on an order for an option on wheat, where, in the broker's dealings with his correspondent, member of a distant stock exchange, the customer's margin is wiped out by application on the broker's indebtedness to his correspondent, without notice to the customer.

6. Corporations—*Directors—Torts—Liability.* Defendants in an action for conversion being the only stockholders and directors of a corporation in sole charge of its affairs, and found to have participated in the acts complained of, held personally liable as joint tort feasors with the company.

### On Rehearing.

7. Judgments—*Body Judgment.* In an action for conversion, the fact that the court did not feel warranted in awarding a body judgment against defendants, held no reason why a money judgment should not be entered against them.

8.  COURTS—*Supreme Court—Justices—Powers.*  Under section 5 of article six of the Constitution, Justices sitting in department may render a decision where no constitutional question is involved.

9.  APPELLATE PRACTICE—*Oral Argument.*  At the time of oral argument in the Supreme Court, the parties may request further oral argument en banc, should the case go there.  In the absence of such request, the right, if it exists, will be deemed waived.

10.  .   *Rehearings.*  Under the existing practice petitions for rehearings in the Supreme Court are determined only after full consideration by the justices participating in the decision.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. H. A. LINDSLEY, Mr. H. E. LUTHE, Mr. J. B. MANBY, JR., for plaintiffs in error.

Mr. L. E. KENWORTHY, for defendants in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

DEFENDANTS in error, plaintiffs below, a copartnership doing business under the name of Shook and Henderson, sued and recovered judgment against Scott, George and Meyer, for alleged conversion of money.  The defendants bring the case here for review.

In October, 1921, and prior thereto, the Scott-George Grain Company, a Colorado corporation, was carrying on a general grain brokerage business in Denver.  It will be referred to as the broker, or defendants' company.  Its sole officers, directors and stockholders were Scott, George and Meyer, the above defendants, now plaintiffs in error.  The broker did a large business on the Chicago Board of Trade through its correspondent in that city, the Rosenbaum Grain Company, then a responsible member of that board.  The last named com-

pany will be mentioned as Rosenbaum, and defendants in error as plaintiffs.

Plaintiffs lived at Akron, Colorado. · In October, 1921, they. gave the broker an order for the purchase of an option on 5000 bushels of May wheat, and paid the broker $1,248.15 in cash as a margin, which was required, according to custom, to protect the broker against declines in the market, between the time of the order in October, 1921, and the delivery date, May, 1922.

The broker filled the order by wiring Rosenbaum to buy, which the latter did, on the Chicago Board of Trade, at $1.17 per bushel. For the quick dispatch of business between the broker and Rosenbaum, an account was kept in Rosenbaum's name at a Denver bank. When the broker executed plaintiffs' order, it was obliged to give Rosenbaum the same protection as to margins which the broker got from plaintiffs. The broker did this by depositing the amount of the margin to Rosenbaum's credit in the Denver bank at the same time that it wired the order to Rosenbaum in Chicago. Rosenbaum bought the wheat and notified the broker in Denver, who in turn notified plaintiffs.

On October 17, 1921, the broker confirmed the transaction by writing plaintiffs as follows: "We have the pleasure of confirming the following transactions made for your account and risk this date. All purchases and sales made by us for you are made in accordance with and subject to the rules, regulations and customs of the Board of Trade of the City of Chicago, and the rules, regulations and requirements of its Board of Directors, and all amendments that are made thereto. On all transactions for future delivery we reserve the right to close same without giving further notice when in our opinion security is not sufficient. Orders considered good for one day unless otherwise specified." Here follows a statement of the purchase, signed by the broker. Plaintiffs did not reply to this letter; they introduced it in evidence as their Exhibit A.

The Rosenbaum firm, in order to protect itself in handling the broker's Chicago business, held the latter's note for $25,000, for which it was given credit on the Rosenbaum books. We are left to guess as to the maturity date of the note, but it was treated as a demand note, as far as it appears of record. At the time of the alleged conversion, the broker owed the note, but had an unused credit of about $10,000 on the Rosenbaum books, leaving a balance of about $15,000 due from the broker to Rosenbaum.

In January, 1922, the Chicago grain market crashed, sending large brokerage concerns to the wall. This forced Rosenbaum to retrench, whereupon he wired the broker in Denver, demanding settlement the next day. The broker failed to comply, and so Rosenbaum closed out the account, applying all of the broker's credits, and also plaintiff's margin for May wheat, on the broker's $25,000 note. Plaintiffs and Rosenbaum were unknown to each other in the transaction. After being closed out by Rosenbaum, the broker treated it as a sale of the plaintiffs' option to Rosenbaum, and sent plaintiffs a confirmatory letter on a printed form like the one used when the purchase was made, as shown in plaintiffs' Exhibit A, above quoted, but plaintiffs were not called upon for further margins, had not authorized the sale, and got none of the proceeds. The broker, defendants' company, is insolvent. Plaintiffs demanded their money, but did not get it, whereupon they sued and recovered judgment for the amount of the margin.

Plaintiffs' theory is that the broker, the Scott-George Grain Company, is guilty of conversion, and that defendants, its sole officers, directors and stockholders, connived and participated in the acts complained of, making them amenable to the same charge. Defendants' contention is that the business, by mutual consent, was transacted according to the rules, regulations and customs of the Chicago Board of Trade; that the loss was occasioned in following such customs, and that there-

fore defendants cannot be held liable. The parties take issue on these points.

1. Plaintiffs' Exhibit A, above quoted, shows that all purchases and sales were made according to such rules, regulations and customs. Plaintiffs cannot deny the effect of their own evidence. But proof that the transaction was in accordance with a special custom is only one step, and does not assist us unless we are informed by the evidence what the special custom is. In this case, defendants have sufficiently shown by testimony the custom relied upon, namely, the practice followed by general grain or stock brokers, when buying or selling on a distant board of trade, to make such sales and purchases through a correspondent or sub-agent having a seat on the exchange. Where seconds count, as they often do in such a business, a local broker situated like defendants' company could scarcely do business in any other way. The practice has ample precedent. Dos Passos on Stock-Brokers and Stock-Exchanges (2d Ed.) vol. 1, pp. 182, 209, 210, 391-394.

2. Compliance with lawful rules and usages of a board of trade is sanctioned in *Board of Trade v. Christie Grain and Stock Co.*, 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031; *Whitehead v. Ballinger,* 38 Colo. 66, 69, 88 Pac. 169, and many other cases.

3. An order from a customer to be executed on a board of trade contemplates conformity to the lawful rules and customs that prevail there. *Bibb v. Allen,* 149 U. S. 481, 489, 13 Sup. Ct. 950, 37 L. Ed. 819; *Wilhite v. Houston,* 260 Fed. 390, 118 C. C. A. 542; *Thomson v. Thomson,* 315 Ill. 521, 146 N. E. 451.

4. But from here on, defendants do not have such clear sailing, for the situation in a nutshell is this: A gives B, a local broker, an order for an option on May wheat, to be purchased on a distant stock exchange. A advances B, say a 20 per cent margin. B executes A's order by wiring his correspondent, C, a broker with a seat on the exchange, to buy the wheat, and with the

order, B passes on or pays the margin money to C, who buys the wheat, or option. So much for the custom. But if B, in sending the money to C, ties a string to it, or then or thereafter before the wheat is delivered, jeopardizes A's rights with a trammeled account between B and C, so that A's margin is wiped out without notice to A, to satisfy B's obligation to C, and B treats the transaction as a sale of the option from himself to C, and confirms the deal, but fails to account to A, then we must say that B can be held liable to A in conversion. Defendants are not assisted by their theory as to the custom claimed to exist on the Chicago Board of Trade contrary to what we say above; there is no proof of any custom permitting such a conversion of a customer's money, and even if there were such proof, we would disapprove of it as illegal, being opposed to sound public policy.

5. Authorities sustaining actions by customers against brokers for misappropriation of funds in the brokers' hands may be found in *Markham v. Jaudon*, 41 N. Y. 235; *Sproul v. Sloan*, 241 Penn. St. 284; and in Bouvier's Law Dictionary (3d Ed.), under headings of "Margin" and "Stockbroker."

6. Counsel for defendants seriously argue that defendants should not be held liable, because the trial court, while finding against them, expressed the belief that defendants thought what they did was justified. We must approve of the judgment nevertheless. It would seem unnecessary to say that the mere fact that a man's ways are right in his own eyes, does not in itself afford legal sanction for whatever he may choose to do. If it did, a ready defense could be found for almost any infraction of the law. The tort proven consisted of a misappropriation by the broker to its own use of the customer's money; the entire brokerage business of the Scott-George Grain Company was conducted by defendants; they were its sole managers and owners and it is impossible to dissociate them from the evidence of

their active participation in the acts by which plaintiffs suffered.

We have given heed to the earnest desire expressed by counsel for defendants that we should consider their defense relating to the customs of the Chicago Board of Trade; it has led us to much interesting reading matter in their able brief, also in the cases therein cited, and in other cases and works on the subject of stockbrokers, but we find nothing to justify a reversal. The judgment will therefore be affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE WHITFORD not participating.

## On Rehearing.

MR. JUSTICE ADAMS.

1.   Counsel for defendants erroneously assume that we have held that defendants were liable solely because they were directors of the Scott-George Grain Company. We did not so hold; counsel have misread our opinion; as there stated, defendants were held because of their own active participation in the unlawful acts of the corporation and themselves, from which plaintiffs suffered. In other words, as joint tort feasors, defendants were held responsible for their own acts, and they are not absolved from liability merely because the corporation also did wrong, nor because the conversion was committed in the corporate name. C. J. 14a, 175, 176; *Nix v. Miller,* 26 Colo. 203, 57 Pac. 1084. It would be as bad to excuse an individual committing a tort in conjunction with a corporation, or under a corporate alias, as it would be to say that John Doe could not be held liable in tort, because committed in the name of Richard Doe.

*Liebhardt v. Wilson,* 38 Colo. 1, 88 Pac. 173, 120 Am. St. Rep. 97, is relied upon by defendants, but it does not aid them. Among other things, it is there pointed out that defendant was only a stockholder, and further, on page 11 of the opinion, that he was not a member of the board of directors, and did not assume to control or di-

rect the affairs of the company. In the instant case, defendants, as sole officers and directors of the company, had active charge and control of the entire corporate machinery; as the only stockholders, they were its sole beneficiaries; it was testified by Scott, and not contradicted, that the directors determined the policies of the company in operating its departments, which they would ordinarily do in any event. Again, while claiming on the one hand not to know what was going on, defendants would also have the court to suppose that plaintiffs' losses were occasioned by an adherence to an alleged custom of the Chicago Board of Trade, asserted by defendants to be of such common knowledge, that everyone connected with the case knew or ought to have known about it. We cannot well credit such contradictions, and are forced to believe that defendants knew what they were doing.

2. Defendants seek to make a point out of the fact that the trial court held that there was not sufficient evidence to warrant a body execution under C. L. 1921, section 5964. They think because of this—there being no such malice, fraud, or wilful deceit as to call for a body execution—plaintiffs cannot recover; but we cannot say that because the trial court did not feel warranted in sending defendants to jail, that there can be no money judgment against them, and we shall not so hold. Plaintiffs raise no question here because of no body judgment being awarded, and defendants have no complaint on this score.

3. Defendants want two oral arguments in this court, but we cannot grant the request. It was orally argued before three of the justices, sitting in department; their decision was unanimous; two other justices concurred; three is enough under article VI, section 5 of the Constitution of the state, and in this matter five agreed; the dispute presents nothing involving the construction of the Constitution of the state or of the United States, so does not need to be decided by the court en banc, under the above section, unless the court so desires.

Rule 43 of this court provides, among other things: "In any cause orally argued in department counsel may, at the time of such argument, request further oral argument en banc, should the cause go there. Failure to so request shall be taken as a waiver of the right." No such request was made, nor was any request for an argument en banc made until after the announcement of the court's decision, so the right, if it existed, was waived. There is nothing in the defense to justify an encore.

4. Counsel for defendants have expressed a fear that the justice writing an opinion may undertake to rule adversely on their petition for rehearing, without the assistance of the other justices who took part in the decision, but this apprehension is groundless, for no such practice obtains here. Petitions for rehearing are always scheduled on the calendar by the clerk of this court, as a part of the business of the day, for the mutual consideration of the justices participating in the decision, and for discussion in conference between them; such petitions are not disposed of until after such full consideration; this one has been so acted upon, but as we are of the unanimous opinion that the petition is without merit, it must be denied. It is so ordered.