Minnie I. Ashby, appellee, v. Richard C. Peters et al., appellants.

Filed February 8, 1935.   No. 29295.

*Dorsey, Baldrige & Chew, John J. Ledwith, Frank E. Randall, Brogan, Ellick & Shoemaker, Wells, Martin, Lane & Offutt* and *Virgil J. Haggart,* for appellants.

*Howard Saxton* and *Allen & Requartte, contra.*

*Reed, Ramacciotti & Robinson* and *George N. Mecham, amici curiæ.*

Heard before GOSS, C. J., EBERLY, DAY and PAINE, JJ., and CHAPPELL. and LOVEL S. HASTINGS, District Judges.

PAINE, J.

The petition charged a conspiracy to defraud against certain named directors of the Peters Trust Company, of Omaha. The jury returned a verdict for damages, against all defendants, upon which verdict a judgment was duly entered.

This is the second appearance of this case in this court, the first opinion being found in 124 Neb. 131, in which certain legal principles were settled.

The original petition in the case at bar was filed against the five directors of the Keystone Investment Company and of the Peters Trust Company, and against Alfred C. Kennedy, who was secretary of the Keystone Investment Company, and charged that these defendants conspired with certain other persons, who were connected as salesmen, or otherwise, in the handling of said bonds, to cheat, wrong and defraud the plaintiff by fraudulent representations made to purchasers of the Keystone Investment Company bonds.

At the first trial in the district court for Lancaster county the trial court directed a verdict for the defendants, and this court reversed that judgment on the ground that, the testimony being in direct conflict upon many material points upon which reasonable minds might draw different conclusions, the cause should have been submitted to a jury for their determination.

After this decision was released, and on July 1, 1933, the plaintiff filed an amendment and supplement to her original petition, which had consisted of 17 paragraphs, and the amendment and supplement to the petition added paragraphs 18 and 19, alleging that the Peters Trust

Company was the parent company of the Keystone Investment Company, which was its affiliate, and for the purpose of borrowing money for the benefit of the Peters Trust Company, without disclosing to the lenders of such money the fact that the Peters Trust Company was the actual owner of the leasehold, the Peters Trust Company acquired all of the 1,810 shares of the capital stock of the Keystone Investment Company.

The nineteenth paragraph alleged that James A. Sunderland, Willson O. Bridges, W. B. Tyler Belt, and another who was not served, were also parties to the fraud and conspiracy mentioned in the original petition, and were directors and stockholders of the Peters Trust Company, and conspired together with the other defendants for the purpose of defrauding purchasers of said bonds in the manner set out in the original petition; that is to say, all of the allegations of the original petition were, by general averment, made applicable to the three additional defendants.

Separate amended answers were filed by W. B. Tyler Belt, Willson O. Bridges, and James A. Sunderland, in which answers said defendants denied knowledge of any alleged fraud or conspiracy respecting the sale of the bonds to the plaintiff.

Trial was had in the district court for Lancaster county, and on April 18, 1934, the jury returned a verdict against all of the defendants in the sum of $2,068. A separate motion for new trial was filed by each of nine defendants, and each was overruled, and judgment entered. Notice of intention to prosecute appeal was filed by each defendant, and supersedeas bonds duly filed. Briefs were filed in this court by the plaintiff and appellee, while on behalf of the defendants and appellants briefs were only filed by the additional defendants, Sunderland, Belt and Bridges. These three defendants presented, in addition to their briefs, a printed abstract of the evidence, which has been of great value. It is indexed as to witnesses, stipulations, exhibits, and also as to the meetings of the stockholders,

directors, and executive committee, the briefs and such abstract making altogether some 700 pages of printed matter.

The facts may be briefly summarized as follows: A seven-story office building at the northwest corner of Seventeenth and Farnam streets in Omaha was known as the Bee Building. The fee of this property was owned by the Bee Building Company, and was encumbered with a first mortgage of $250,000 to the New York Life Insurance Company. On February 1, 1917, the Keystone Investment Company secured a 99-year lease on said building. The entire capital stock of the Keystone Investment Company was afterwards purchased for $181,000, paid by the Peters Trust Company, and 1,805 shares of it placed in the name of the Peters Trust Company, and five certificates, of one share each, were issued to five directors of the Peters Trust Company, although never at any time their individual property, but so issued simply to qualify them to act as dummy directors of the Keystone Investment Company, it being at all times wholly owned by the Peters Trust Company.

It has been held that where a share of stock in a corporation was transferred to a person for the purpose of qualifying him as a director in the corporation, he constituted what is commonly called a "dummy" director. *Hoopes v. Basic Co.*, 69 N. J. Eq. 679.

On May 8, 1919, the first bond issue of $400,000 was issued by the Peters Trust Company through its subsidiary, the Keystone Investment Company, to the Peters Trust Company as trustee, and sold to customers for $400,000, upon the property they had just purchased for $181,000. On May 17, 1923, the Peters Trust Company, through and in the name of the Keystone Investment Company, issued $400,000 of "refunding" bonds to take up its first issue of the same amount, maturing June 1, 1924. This refunding issue bore 6 per cent. interest from June 1, 1923, and matured June 1, 1933. These refunding bonds were each designated "Peters Trust Building Refunding

First Mortgage Real Estate Gold Bond." The plaintiff purchased $1,600 of these bonds during the years 1923 and 1924. It is charged by plaintiff that the Peters Trust Company owned the leasehold, but did not disclose the fact of its ownership to the purchasers, bearers, owners, or holders of the Keystone bonds.

On December 10, 1929, the Peters Trust Company filed a voluntary petition in bankruptcy, and on the same date was adjudicated bankrupt. On October 15, 1930, the Bee Building Company secured judgment for possession and restitution of the Bee Building premises in an action of forcible entry and detainer, founded upon the default in the payment of the rentals of the 99-year lease by the Keystone Investment Company, and on November 5, 1930, a decree was entered in the district court for Douglas county, canceling said lease and quieting title to the real estate in the Bee Building Company.

The interest upon the $400,000 issue of bonds of the Keystone Investment Company was paid promptly at the office of the Peters Trust Company up to and including the coupons due June 1, 1929, after which date the interest was not paid, and all of the bonds became absolutely worthless in the hands of their holders, including the plaintiff in this case.

James A. Sunderland, one of the defendants, testified that he was 73 years old, and had lived in Omaha over 50 years, during which time he had been an officer of the Sunderland Brothers Company continuously; that he owned 62 shares of stock in the Peters Trust Company, but that he never transacted any business with the company except in connection with his membership on its board of directors. The minutes of the stockholders' meetings show that he was elected a director each year from 1920 to 1925, but he testifies that he did not serve under the last election.

Dr. Willson O. Bridges testified that he practiced medicine in Omaha for 46 years until he retired in October, 1929. The minutes of the stockholders' meetings show

that he was elected a director of the Peters Trust Company from 1920 to 1926 inclusive.

W. B. Tyler Belt testified that he had lived in Omaha 50 years, and was president of the Northwestern Bell Telephone Company; that he owned stock in the Peters Trust Company, for which he had paid $14,133, and the minutes of the annual stockholders' meetings show that he was elected a director each year from 1919 until he resigned July 15, 1929.

These three are the only defendants filing briefs, and contesting the matter in this court. They call our attention to the fact that they were never officers nor directors of the Keystone Investment Company, and insist that they had nothing to do with the issuance of the bonds by the Keystone Investment Company, and that while they were directors of the Peters Trust Company the two corporations were separately officered and managed. These three defendants deny that they knowingly authorized or consented to the issuance of bonds containing any false misrepresentations.

They also insist that the plaintiff has failed to prove that any of them had any knowledge of the phraseology of the bonds, or of any statements or representations in them, until after they were sued by the plaintiff in July, 1933, and that the only mention of these bonds at a Peters Trust Company directors' meeting was at a meeting held June 30, 1923, six weeks after the bonds had been issued by the Keystone Investment Company, at which meeting the chairman of the executive committee of the Peters Trust Company reported to the directors that the executive committee had undertaken to sell the Keystone building refunding bond issue for a small commission.

These three defendants further contend that there was no fraud in the mere issuance of the refunding bonds, while the plaintiff alleges that the fraud was in so wording the bonds as to misrepresent their nature and security. Defendants insist that they should not be held liable upon the sole ground that they were directors of the Peters

Trust Company at the time the bonds were issued, and insist that this court must pass upon the question whether a director can be held individually liable for the fraud, failure of duty, or wrongful act of his corporation to a third person, or for the wrongful acts of other directors or agents of his corporation, of which he had no knowledge and in which he did not participate.

It will be necessary to examine the evidence in relation to these points. The records of the directors' meetings of the Peters Trust Company show that between January 27, 1920, and December 30, 1924, some 24 meetings were held, and of these meetings Mr. Sunderland attended some 17, and Dr. Bridges and Mr. Belt 18 each, showing that they were quite regular in their attendance for busy men, and the records show they were paid $10 for each meeting they attended. They also received dividends upon their stock, which were paid for a considerable period at the rate of 12 per cent. per year. The profits of the Keystone Investment Company were, of course, the property of the Peters Trust Company.

At the directors' meeting of March 30, 1921, provision was made for the executive committee to consist of seven members, and then followed this provision: "Regular minutes of the proceedings of the committee shall be kept by the secretary in a book provided for that purpose, which shall always be open for inspection by any of the directors."

It was shown that it was the custom of the chairman of the executive committee to take such minute book of the executive committee meetings and give a digest of its contents at the next meeting of the board of directors. When such report was made at the directors' meeting on March 30, 1923, Sunderland made the motion, and Belt seconded it, that the action of the executive committee be approved.

It appears that on May 7, 1923, a meeting of the executive committee of the Peters Trust Company was held, and a resolution was there adopted that the new $400,000 ten-

year bond issue, being the refunding issue of the Keystone Investment Company, should be made. On May 17, 1923, the Keystone Investment Company directors held a meeting for the same purpose, and at the meeting of the board of directors of the Peters Trust Company held June 30, 1923, when the defendants Belt, Bridges and Sunderland were all present, a detailed synopsis of all of the proceedings in the meetings of the executive committee was given to the board of all that took place in the executive committee for the three months prior to June 30, 1923. This included telling the board of directors that the new refunding bond issue of the Keystone Building Company was to be authorized as set forth in those minutes, and after such complete report was made, and on motion of Mr. Belt and seconded by Dr. W. O. Bridges, the report was approved and adopted. Mr. Sunderland testified: Q. 2807. "Well, what did he say that was to refund—or did you already know if he didn't say it? A. I don't think he said, but I knew it referred to the refunding of the leasehold bonds for $400,000." And in his next answer he said that he knew there was a $250,000 mortgage on the fee.

The three defendants contesting the case at bar rely, as did the other directors in the cases of *Ashby v. Peters,* 124 Neb. 131, and *Paul v. Cameron,* 127 Neb. 510, upon the defense that the bonds were prepared by the attorney for the Peters Trust Company, who attended to all of the details, including the language employed in the bonds themselves.

In the case at bar, the record shows that Belt, Bridges and Sunderland participated by giving their final approval in the directors' meeting by ratifying and approving the bond issue that was to be put upon the market.

The bonds were issued by the Keystone Investment Company, but that was merely another form of the Peters Trust Company, which owned all its capital. It was under the exclusive jurisdiction and control of the directors of the Peters Trust Company, and what they did upon any point was what governed. There is not the slightest

doubt that the real authority and power lay with the Peters Trust Company. Any man taking a position as director in the Keystone Investment Company took it with the knowledge that he was merely a figurehead to carry out the plans and purposes directed by the board of directors of the Peters Trust Company. What directors individually did when they voted to affirm the action of the executive committee and the Keystone Investment Company was their individual act, and the effect of it must be judged by what it did.

1. The defendants are charged with conspiring to defraud the plaintiff. The presumption is that all men act honestly, and therefore fraud is never presumed, but must be proved by the plaintiff. Fraud in Nebraska may be without scienter or knowledge. Where one makes misrepresentation of material facts without knowledge that the same is false, he may, under some circumstances, become liable if damage arises therefrom. The crux of the case, as proved by the plaintiff to the satisfaction of the jury, is that the directors of the Peters Trust Company, through their agents, and through the language duly authorized to be printed in the bonds themselves, and in the circulars put out to sell the bonds, represented that the bonds were first mortgage bonds, and further represented that the bonds were secured by a first mortgage on real estate, and that both of these statements were false, although the plaintiff believed them, and invested her money on the strength of them. In a conspiracy there must be a meeting of the minds of the parties charged, for the purpose of bringing about the act charged, and this may, as in this case, be proved by circumstantial evidence.

The opinion in *Kavanaugh v. Commonwealth Trust Co.*, 118 N. Y. Supp. 758, is illuminating. It was an action brought by a stockholder to recover funds of a trust company alleged to have been lost through the negligence of the directors. It holds that directors of a trust company may delegate their work to assistants, but may not dele-

gate their responsibility, and are not excused from liability because they committed their duties to an executive committee. The stockholders elected the directors, not the executive committee; and if the directors saw fit to rely on the executive committee, it was their own reliance and their own risk. It quotes from the old case of *Scott v. Depeyster,* 1 Edw. Ch. (N. Y.) 513, in which it was said: "I think the question in all such cases should and must necessarily be, whether they have omitted that care which men of common prudence take of their own concerns? To require more would be adopting too rigid a rule and rendering them liable for slight neglect, while to require less would be relaxing too much the obligation which binds them to vigilance and attention in regard to the interests of those confided to their care and expose them to liability for gross neglect only—which is very little short of fraud itself."

2. Directors of trust companies are not spies upon the officers, nor are they expert bookkeepers. It cannot be required that directors should make at each meeting a complete examination of their company, but they should personally have a general knowledge of the condition of the institution.

Directors are required to give the same degree of care and prudence as is generally exercised by men in their own affairs. The law requires of directors such diligence and supervision as the situation and the nature of the business requires. Their duty is to watch over and guard all the interests committed to them. The idea formerly prevailed, to some extent at least, that a director was chosen because he was a man of good character and outstanding financial ability, and for those reasons he would add prestige to the financial institution, and that he had nothing further to do but simply let the officers run the corporation. This is not the rule in Nebraska. Directors, it has well been said, are not gilded ornaments to enhance the attractiveness of an institution, and to supinely allow the officers to run the institution until some event occurs

which arouses their suspicion. This theory would lead to the idea that the more ignorant directors could prove they were about its affairs, the more they could escape from any liability in connection therewith.

Directors should know of, and give direction to, the general affairs of the institution and to its business policy, and have a general knowledge of the manner in which the business is conducted. No custom or practice can make a directorship a mere position of honor, void of responsibility. It has also been said: "The personnel of a directorate may give confidence and attract custom; it must also afford protection." *Kavanaugh v. Commonwealth Trust Co.,* 223 N. Y. 103.

Where the duty of knowing exists, ignorance due to neglect of duty on the part of a director creates the same liability as actual knowledge and a failure to act thereon.

3, 4. In *Hamilton Ridge Lumber Sales Corporation v. Wilson,* 25 Fed. (2d) 592, it is said that, where the facts justify it, courts will look beyond the mere corporate entity to the persons who compose the corporation, and the rule is not limited to cases where corporate entity has been resorted to for purely fraudulent and criminal purposes, but extends to acts amounting to constructive fraud only. Although a corporation is considered a legal person in law, distinct from its stockholders, and is so recognized when there is no reason against it, yet it is just as well settled that this general doctrine should be disregarded, and the acts of the persons examined who constitute the corporation. A corporation has no thought or will of its own, and its every act is the act of the individuals who are running it, and where fraud is committed by the corporation, it is time to disregard the corporate fiction and hold the persons responsible therefor in their individual capacity. 14 C. J. 59; Clark, Corporations, 10; *State v. Standard Oil Co.,* 49 Ohio St. 137, 15 L. R. A. 145; *In re Muncie Pulp Co.,* 139 Fed. 546; *Cosmopolitan Trust Co. v. Mitchell,* 242 Mass. 95; *Talich v. Marvel,* 115 Neb. 255; Morse, Banks and Banking (6th ed.) sec. 128.

5. In *Paul v. Cameron*, 127 Neb. 510, being an action brought to recover upon the same issue of Keystone Investment Company bonds, a verdict was recovered, and this court affirmed the judgment entered thereon. It also was held: "In this state, in actions for false representations, proof of a scienter is not essential to recovery; and where a petition in this class of cases clearly and positively alleges that the representations relied on by the plaintiff were false, while the further allegation in effect 'that the defendant knew it was false, or else made it without knowledge as a positive statement of known fact,' is in accord with good practice, it is not essential to recovery that either be incorporated in such pleading or covered in the instructions to the jury."

The action of the Keystone Investment Company directors taken May 17, 1923, was ratified on June 30, 1923, by the directors of the Peters Trust Company, with these three defendants taking part therein and voting to adopt the resolution. Plaintiff insists that it is not necessary that all of the directors know the false representations in the bonds, although the jury could properly infer that fact from the evidence. The board of directors of the Peters Trust Company approved, ratified, and affirmed the issuance of these bonds by the Keystone Investment Company. The word "approve" means to sanction officially, to regard as good, to commend; "ratify" means to give sanction to, as to something done by an agent or a servant, as to ratify a contract, and to affirm means to confirm or ratify.

1 Restatement, Law of Agency, 565, sec. 256, upon the subject of misrepresentations by an agent without knowledge of the principal, holds: "(1) A principal who authorizes an agent to conduct a transaction for him, intending that the agent shall make representations to another in the course of it which the principal knows to be untrue, is liable for such misrepresentations as if he himself had made them intentionally; if, although he does not intend that the agent shall make misrepresentations, he should know that the agent will do so, the principal is

liable as if he himself had made them negligently." This section of this new work may be said to be in line with decisions of the Nebraska court, such as *Willard v. Key*, 83 Neb. 850; *Howard v. Duncan*, 94 Neb. 685; *Peterson v. Schaberg*, 116 Neb. 346.

6. In *Ashby v. Peters*, 124 Neb. 131, it was held that, save for the purpose of conveyance, a lease for more than one year is not real estate, and that the purchaser of a bond has a right to rely upon the representations on the face of the bond as to the security for the bond unless he has knowledge to the contrary, which is a question for the jury. We also determined in that case: "The officers of a corporation are responsible for the acts of the corporation, and in a suit for fraud, if fraud is proved, the law will look through the corporation to the officers who acted in the matter, and the officers who acted in the premises are proper parties defendant."

The charge made against these three defendants, of fraud and conspiracy, was submitted to a jury in the district court, under instructions in which no prejudicial error has been pointed out, and the jury determined the fact adversely to the defendants. It was decided by this court in *Ashby v. Peters, supra,* that a careful examination of the two different circulars would have disclosed that the bonds were secured by a first lien on the leasehold of the Peters Trust building, but that plaintiff would not have discovered the important fact that the fee of the premises was encumbered by a prior mortgage for $250,000 to the New York Life Insurance Company.

The directors who are defendants all knew of this first mortgage outstanding. Many investors would refuse to buy if they knew that mortgage was outstanding ahead of this issue of $400,000 of refunding bonds. Therefore, this vital, material fact was skilfully concealed from the plaintiff by action of the board of directors, to her injury.

In *Paul v. Cameron, supra,* it was said: "In substance, it is the claim of plaintiff that, accepting as true, and dealing on the basis of, the recitals set forth in and on the

bonds he purchased, and relying on the representations thus made, the obligations he bought were secured by a first mortgage on the building he had inspected which was real estate; that these representations were false, and he was deceived thereby, for in truth his mortgage security was neither a first mortgage, nor was it upon real estate."

It was the duty of the defendants in the case at bar to know that the material statements in these bonds put out and sold under authority of the board of directors of the Peters Trust Company in a meeting which they attended were true. Such directors are liable for damages sustained by any one purchasing such bonds who had relied upon the truth of such material statements which are now proved to have been false.

Additional cases supporting the principles set out herein are: *Gerner v. Mosher*, 58 Neb. 135; *Gregory v. Binghampton Trust Co.*, 154 N. Y. Supp. 376; *Omaha Electric Light & Power Co. v. Union Fuel Co.*, 88 Neb. 423; *Hilligas v. Kuns*, 86 Neb. 68; *Masonic Bldg. Corporation v. Carlsen, ante*, p. 108; *State v. Farmers State Bank*, 127 Neb. 139; *Gibbons v. Anderson*, 80 Fed. 345; *Strauss v. United States Fidelity & Guaranty Co.*, 63 Fed. (2d) 174; *People v. Mancuso*, 255 N. Y. 463; *Cleland v. Anderson*, 66 Neb. 252; *Farley v. Peebles*, 50 Neb. 723; *Deupree v. Thornton*, 97 Neb. 812; *Marsh-Burke Co. v. Yost*, 98 Neb. 523; *Dunbier v. Mengedoht*, 119 Neb. 706; *Foley v. Holtry*, 43 Neb. 133; 12 R. C. L. 347, 348, 359, secs. 102, 103, 113.

While the evidence is conflicting, yet it appears to be ample to sustain the verdict of the jury. Other errors, of which complaint is made, were examined, but found not to be prejudicial, and the judgment of the district court is

AFFIRMED.