**PRESTON–THOMAS CONSTRUCTION, INC., a corporation, et al.,**
**Appellees,**

**v.**

**CENTRAL LEASING CORPORATION, a corporation, et al., Appellants.**

**No. 45566.**

Court of Appeals of Oklahoma, Division 2.

Oct. 2, 1973.

Released for Publication by Order of Court of Appeals Jan. 31, 1974.

Hal L. Grider, Altus, for appellees.

Kurt F. Ockershauser, Travis & Jordan, Oklahoma City, for appellants.

BRIGHTMIRE, Presiding Judge.

By jury verdict two corporate officers and directors have been found to be personally liable for converting money held by the corporation in trust for appellees. The two officials want the verdict vacated and a judgment rendered in their favor primarily because—as stated in their first proposition—"Corporate officers and directors are not liable for the wrongful acts of a corporation or of another corporate officer . . ." so that the trial court should have directed a verdict for them.

Genesis of the dispute goes back to the summer and fall of 1969. It was during this period appellant Rogers drew up and executed Articles of Incorporation of Central Leasing Corporation. He later became its secretary and treasurer and appellant Walker its president. During this same period appellant Rogers talked with D. G. Carpenter about acquiring the controlling stock held by the latter in Triple "AAA" Company—a root beer manufacturer.

To acquire the root beer company stock appellants worked out this plan: "A corporation was to be formed for the purpose of . . . buying the controlling interest"; another officer (Executive Vice President Bennett) was "to raise the money . . . put it into a bank account, and . . . use for the purpose of purchasing the root beer company . . . ." Appellant Rogers was to organize a corporation and negotiate a contract of sale of the Triple "AAA" stock.

Appellees were among those solicited. Money was obtained from them upon the representation that it would be held by Central Leasing—the newly formed shell corporation—until Triple "AAA" stock was acquired at which time they would receive Triple "AAA" stock at the rate of $2 per share. It was also represented that if the promoters were unable to acquire the root beer company then appellees' money would be returned to them.

Eventually appellants on behalf of Central Leasing signed a contract with D. G. Carpenter which among other things required the corporation to put up $10,000 earnest money to be forfeited if Central Leasing did not close the deal a month and a half later by paying an additional $89,095 and giving a note for $250,000 for 232,730 shares of Triple "AAA" Company stock (about 85% of the outstanding stock at the rate of $1.50 a share).

Appellants paid themselves $1,000 each out of the deposited funds and gave D. G. Carpenter the $10,000 earnest money. Central Leasing was unable to raise the required $89,095 by the specified date, so Carpenter refused to extend the time and declared the $10,000 his and the contract void.

Appellees were not told of the loss of their money. They kept waiting for Triple "AAA" stock or return of their money for several months and when it was not forthcoming brought this action against both the corporate shell and its officers and directors.

Appellants' first proposition—that corporate officers are not liable for wrongful acts of the corporation—is but a partial rule of law. The rest of the rule is inferentially described in Schroeder v. Sanford-Felt Inv. Co., 177 Okl. 54, 57 P.2d 601 (1936), and is that an officer or director of a corporation is personally liable for the wrongful use of funds entrusted to it if (1) he receives any of the money; (2) if he participates in the wrongful asset distribution; (3) or, being ignorant of the wrongdoing, he is negligent in failing to learn of and prevent it. The law will not permit an officer or director to escape personal responsibility for his corporation's intentional malfeasance by preserving a state of ignorance through a gross or willful neglect of duties. Allied Freightways, Inc. v. Cholfin, 325 Mass. 630, 91 N.E.2d 765 (1950). Moreover, corporate directors and officers are presumed to know that which it is their duty to know and about which they have the means of knowing. Darling & Co. v. Petri, 138 Kan. 666, 27 P.2d 255 (1933). Or to state it another way the officials are bound to know what they ought to know and would have known by proper attention to their business. Baltimore & Ohio R.R. v. Foar, 84 F.2d 67 (7th Cir. 1936). And where the duty to know exists, ignorance resulting from a neglected official duty creates the same liability as actual knowledge. Ashby v. Peters, 128 Neb. 338, 258 N.W. 639, 99 A. L.R. 843 (1935).

Existence of circumstances and facts which would arouse the suspicions of an ordinary prudent business man will furnish a basis for the personal liability of an officer or director who fails to make reasonable inquiry and act with due care regarding the suspicions. Cornell v. Seddinger, 237 Pa. 389, 85 A. 446 (1912).

And with specific reference to the conversion of funds in possession of a corporation, an officer thereof is personally liable for any act which constitutes a conversion of a third person's property even though the act be done on behalf of the corporation. Scott v. Shook, 80 Colo. 40, 249 P. 259, 47 A.L.R. 1108 (1926); Clark v. Groger, 102 Wash. 188, 172 P. 1164 (1918). Such liability for conversion does not rest upon the knowledge or intent of the defendant. Poggi v. Scott, 167 Cal. 372, 139 P. 815 (1914). If tortious conversion there be, it matters not how good the intentions that brought it about, or how great the care used to prevent it, or how firm the belief of its rightness. Stack v. Gudgel, 60 Okl. 32, 158 P. 1144 (1916).

Applying the foregoing general rules to the evidence in this case we are bound to hold the evidence was circumstantially sufficient to warrant a jury finding that appellants (1) received part of appellees' money; (2) negligently failed to inquire of Bennett about the true status of appellees' money; (3) negligently agreed to the $10,000 forfeiture at a time when the availability of another $89,000 was based on naught but faith and hope.

The stance assumed by appellants is to admit Bennett deceived and the corporation defalcated but to plead individual innocence by reason of ignorance of Bennett's commitment to appellees. The circumstances involved here are such that the jury could justifiably infer that appellants either knew of Bennett's representation to appellees or should have known. Of course, if they knew then the tort they committed was an intentional one. If they did not know but should have then their misappropriation of appellees' money was at least negligent. Moreover a finding that the funds were never owned by Central Leasing but were held in trust for the purchase of Triple "AAA" stock (and failing this to be returned to appellees), appellants use thereof for other purposes was a conversion.

Appellants as president, secretary and treasurer, and directors knew the corporation had no assets (in excess of $750) nor any income producing thing to sell. When appellees' money came in they had to know it was not a gift to the corporation. They do not contend it was for the

purchase of Central Leasing stock. They do not contend it was a loan to Central Leasing. And if the officials knew it was none of these then they had to know deductively that the money was being received by the corporation as a trustee for appellees. As handlers of the constructive trust fund appellants were obliged to discover the terms of the trust and comply therewith. They could not, under these circumstances, take appellees' money and convert it to the use of themselves and the corporation and escape liability to them "by simply saying . . . 'You cannot prove that we knew that the property converted by us belonged to you, and therefore we are not liable.' Surely there is no principle of law or equity that would uphold such an unjust rule." McClory v. Dodge, 117 Cal.App. 148, 4 P.2d 223 (1931)—a case involving facts not greatly dissimilar from those in the case at bar.

Appellants' other proposition is that the giving of instruction 5–C was reversible error. In rejecting this contention we hold the "finding" instruction adequately summarized the law as it pertained to the legal obligations of corporate officers and directors.

Affirmed.

BACON and NEPTUNE, JJ., concur.