**BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY,**
Plaintiff,

v.

**PHILLIPS PETROLEUM COMPANY, Frank Maltsberger, Jarrett Maltsberger d/b/a/ Maltsberger Bros. Oil Company, Burk–Bales Corporation, Jeff Bales and Robert Burk, Defendants.**

No. 99–CV–817–C.

United States District Court, N.D. Oklahoma.

Sept. 11, 2001.

Rod L. Cook, Rainey Ross Rice & Binns, Oklahoma City, OK, David E. Cowen, Douglas W. Poole, Lyle Courtney, McLeod Alexander Powel & Apffel, Galveston, TX, for Burlington Northern and Santa Fe Railway Company.

Joseph Arthur McCormick, James Edward Cinocca, Jr., McCormick & Fields, Tulsa, OK, for Frank Maltsberger, Jarrett Maltsberger.

Blake K. Champlin, Shipley Jennings & Champlin, Tulsa, OK, for Burk–Bales Corp., Robert Burk.

Jefferson CV Rees, Phillips Petroleum Company General Counsel, Bartkesville, OK, Steven Joseph Adams, Lloyd W. Landreth, Gardere Wynne Sewell, LLP, Tulsa, OK, Jeffery E. Carlson, Tulsa, OK, for Phillips Petroleum Company.

## ORDER

H. DALE COOK, Senior District Judge.

Before the Court are the cross motions for summary judgment filed by plaintiff Burlington Northern & Santa Fe Railway Company (Burlington), and defendants Burk–Bales Corporation (BBC) and Robert Burk, individually (Burk).

### Summary of the Claim

BBC leased property from Burlington for the operation of a bulk oil facility in Pawnee, Oklahoma. Robert Burk owns 60 percent of the shares of BBC and is the president of the company. During the term of the lease, on January 14, 1997, the Oklahoma Department of Environmental Quality Waste Management Division (ODEQ) issued a Consent Order pursuant to 27A O.S. § 2–3–506 and 75 O.S. § 309, subd. E for site remediation with BBC, primarily for the clean-up of diesel oil and gasoline spills near and around dispensing outlets. Upon BBC's failure to remediate the site, the ODEQ made demand upon Burlington, as the property owner. To comply with the directives of the ODEQ, Burlington contends it paid $236,756.45 in costs to remediate the site.

In its amended complaint, Burlington also included former lessors of the property as party-defendants: Phillips Petroleum Company, Frank Maltsberger and Jarrett Maltsberger d/b/a Maltsberger Brothers Oil Company, and Jeff Bales, seeking damages against each defendant for chemical trespass, negligence, contractual indemnity, breach of contract, and for declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675. Plaintiff has settled its claims with Phillips Petroleum and the Maltsbergers, and default judgment has been entered against Jeff Bales.

Plaintiff seeks summary judgment against BBC and Burk on its state law claims of breach of contract, negligence and indemnity, contending entitlement based on undisputed facts. Burlington seeks the cost of remediation, less the amount in settlement with Phillips and the Maltsbergers. BBC and Burk request denial of judgment in favor of plaintiff asserting disputed facts and, in turn, seek

judgment against Burlington based on Burk's sworn statement.

The Court has reviewed the pleadings, exhibits and applicable law and enters the following determination.

*Statement of Facts*

*The Parties and Their Relationship*

1. Burlington is the owner of the property involved in this action. BBC leased and operated a bulk oil and fuel facility situated on the property from October 15, 1994, to early 1998. BBC also used the facility for storing oil and gas.

2. The facility was operated as a bulk oil distribution facility by Phillips Petroleum from 1930 to 1968, and as a storage facility for gas and oil by Maltsberger Bros. Oil Co. from 1968 to 1994.

3. Burk executed an Assignment of Lease with Burlington's prior tenant Jarrett Maltsberger on October 15, 1994. Burk signed the Assignment of Lease in his capacity as an officer of BBC.

4. Robert Burk and Jeff Bales are shareholders in BBC.

*ODEQ's Letter of May 15, 1997*

5. In a letter dated May 15, 1997, the ODEQ, advised Burlington that on Tuesday, August 29, 1996, the ODEQ received a citizens complaint that an above ground diesel bulk tank was leaking at the facility and the ground was saturated. The assistant Fire Chief and personnel from ODEQ investigated the complaint. The ODEQ stated it found evidence of fresh spillage and ponding of fresh diesel in an area about 15 feet by 60 feet.

6. The ODEQ letter stated that on Tuesday, September 3, 1996, it formally notified Jeff Bales of BBC regarding the spills. Mr. Bales promised to respond immediately. The ODEQ subsequently sent Burk a warning letter, requiring him to submit a clean up plan within 15 days.

The letter stated that Burk failed to submit the plan.

7. The letter further stated that in October, ODEQ returned to the site and inspected an area of stained soil about 30 paces long, some of which was saturated. The letter stated Bales told the ODEQ he was preparing a plan of action.

8. In the letter, the ODEQ further advised Burlington that in January, 1997, personnel from its office observed the same stained area and three fuel leaks from piping at the facility. A rapid fuel leak was observed at a pumphouse connection as a truck was transferring fuel. All three fuel leaks were dripping to the ground surface and there was a strong fuel odor and visible fuel present on the ground surface below a dripping pipe.

9. Burlington was informed that on January 13, 1997, Bales voluntarily entered into an agreed order with the ODEQ. Bales agreed and was ordered to develop a work plan to remediate the site with ODEQ's approval. A plan was submitted to the ODEQ in April, 1997, with a cost estimate of $8,548.

*ODEQ's Findings*

10. In its findings of fact, the ODEQ found evidence of the release of # 2 diesel fuel occurring over an unknown period of time from at least one of two 1,000 gallon steel above ground storage tanks and their dispensing units. Also possibly spillage of super unleaded and/or regular unleaded gasoline from the dispensing outlets from three 12,000 gallon steel storage tanks.

11. In its findings, the ODEQ determined that the storage tanks, contaminated wooden structures and an undetermined quantity of soil had to be removed and properly disposed of because the contamination violated Oklahoma statutes and regulations regarding environmental protection.

12. Thereafter the ODEQ made demand upon Burlington to effectuate remediation.

*Relevant Lease Provisions*

13. Pursuant to the terms of the lease, the lessee agreed to pay all taxes or other charges which may become due or assessed against the premises, the lessees, or the business conducted on said premises during the term of the lease. Paragraph 2, page 2.

14. The lessee agreed to observe and comply with all Federal and State laws and ordinances, and all rules and regulations issued by the ICC or other lawful authority. Paragraph 5, page 2.

15. The lessee was obligated to keep the premises in a neat, orderly and safe condition at all times. Paragraph 9, page 3.

16. The lessee agreed, upon termination of the lease in any manner, to restore the premises to substantially its former state and in a condition satisfactory to the lessor. In case of failure to do so within 30 days after termination, the lessor could, at its discretion, restore said premises at the expense of the lessee. Paragraph 11, page 4.

17. Termination of the lease does not release either party from any liability or obligation that may have been accrued against it during the term of the lease. Paragraph 10(IV), page 4.

18. The lessee agreed to indemnify and hold harmless the lessor against loss or destruction of or damage to the property whatsoever and to whomsoever belonging, caused or directly contributed to by the use or occupancy by lessee of the premises, or by act or omission of lessee, lessee's agents, servants, employees or invitees, while on the premises, and/or the violation or breach of any of the provisions of the lease, or if jointly caused by the parties to

the lease, it would be borne by them equally. Paragraph 12, page 4.

*Contentions of the Parties*

Burlington contends that the contamination to its property occurred by BBC and Burk during the term of the lease. Burlington argues that BBC is liable for the cost of remediation due to its negligent operation of the facility, and as a breach of the lease. Burlington seeks to hold Burk individually liable as a co-actor and as an operator of the facility.

BBC and Burk deny liability. However, neither defendant has contested the findings of the ODEQ, BBC and Burk both contend that any contamination which occurred during their leasehold interest was cleaned up contemporaneous with the spill. Both deny any negligence in the operation of the facility. Burk also denies that he was a co-actor or an operator of the facility.

*Conclusions and Applicable Law*

The right and obligations of the parties herein are controlled by the terms of the lease. "A lease is a contract and in construing a lease, the usual rules for the interpretation of contractual writings apply. Generally, the terms of the parties' contract, if ambiguous, clear, and consistent, are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intentions of the parties as it existed at the time the contract was negotiated." *Osprey v. Kelly–Moore Paint Co.,* 984 P.2d 194, 198 (1999).

■ Under the express terms of the lease, BBC was obligated to keep the premises neat and in a safe condition. BBC was also obligated to conduct its operations in conformity to state laws and regulations. It is undisputed that the ODEQ issued a directive for remediation of the premises owned by Burlington and subject to BBC's leasehold interest. It is

also undisputed that Burlington incurred costs associated with remediation of the site. Under the terms of the lease, any charges assessed against the premises, BBC, or the facility during the term of the lease, can be recovered by Burlington.

██ Burlington's motion for summary judgment against BBC on its claim for breach of contract is granted, in part. Burlington may recover from BBC the cost of remediation of contamination which occurred to the premise as a result of the operation of its facility during BBC's leasehold interest. Contrary to BBC's claim, Burlington may recover the actual cost of remediation associated with the operation of BBC's facility. Burlington's damages are not limited to the diminution in value of the property because the terms of the lease provide the measure of damages. Reserved for trial is the issue of damages, if any, measured by the cost of remediation of contamination occurring during BBC's leasehold interest. BBC's cross motion for summary judgment on Burlington's claim for breach of contract is denied.

██ Burlington's request for judgment against Burk, on its claim for breach of contract is denied. Any damage which resulted by BBC's breach of the lease is a debt of the corporation. An officer of a corporation is shielded from personable liability for corporate indebtedness. Oklahoma law permits a court to disregard the corporate entity, only if the corporation is used: (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, (4) to defend crime. Only if the corporate entity is used to accomplish these purposes will the law treat the corporation as an association of persons and hold officers individually liable. *See, Estate of Rahill v. Rahill,,* 1991 Ok Civ App 83, 827 P.2d 896, 897 (1991). Burlington has not made such a showing in this case. Burk's cross motion for summary judgment as to Burlington's claim

for individual liability based breach of contract is granted.

██ Burlington's request for judgment against BBC and Burk as to its claim of negligence is denied. Burlington can recover against BBC on its claim of negligence if negligent conduct by the corporation can be established under the evidence, which BBC denies. Since a corporation is only a legal entity, it cannot act by itself. It can only act through its officers and employees, and these acts are attributed to the corporation under the principles of agency. *Magnum Foods, Inc. v. Continental Casualty Co.,* 36 F.3d 1491, 1498 (10th Cir.1994). When a corporation breaches a nondelegable duty, through the acts or omissions of its employees, it is held directly liable for that negligence. *Id.*

██ Burlington also has the right to recover against Burk, on its claim of negligence, if Burlington can establishes that Burk neglected to perform his official corporate duties. *See, Preston–Thomas Construction v. Central Leasing Corp.,* 518 P.2d 1125, 1126 (Ok.App.1973). "[C]orporate directors and officers are presumed to know that which it is their duty to know, and about which they have the means of knowing. Or to state it another way the officers are bound to know what they ought to know or would have known by proper attention to their business." *Id.* Officers of a corporation can be held liable for intentional or negligent breach of duty. *Id.* at 1127. BBC's and Burk's cross motion for judgment as to Burlington's claim for negligence is denied.

In summary, the Court Orders as follows:

Burlington's motion for summary judgment as against BBC on its claim for breach of contract is GRANTED, in part. Reserved for trial is a determination of the

amount of damages. The measure of damages is the cost of remediation of contamination occurring during the term of BBC's leasehold interest.

BBC's cross motion for judgment as to the claim of breach of contract, is DENIED.

Burlington's motion for summary judgment as against Burk on its claim for breach of contract is DENIED. Burk's cross motion for judgment as to the claim of breach of contract, is GRANTED.

Burlington's motion for summary judgment on its claim of negligence against BBC and Burk is DENIED. BBC's and Burk's cross motion for summary judgment as to negligence is also DENIED.